# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

RAYMOND P. DUNN
and LINDA C. DUNN,

    Plaintiffs,

v.

DEUTSCHE NATIONAL TRUST
COMPANY AS TRUSTEE OF
AMERIQUEST MORTGAGE
SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

    Defendants.

CIVIL ACTION NO. 1:08-cv-4-PB

## CERTIFIED COPY OF STATE COURT RECORD

Defendant Ameriquest Mortgage Company, ("Ameriquest"), pursuant to Local Rule

81.1(c) of the Court, hereby files in the above-captioned matter a certified copy of the state court

record in this matter.

    Respectfully Submitted,

    AMERIQUEST MORTGAGE COMPANY,

    By its attorney,

    /s/  Bradley C. Morin
    Bradley C. Morin (Bar No. 17728)
    brad.morin@klgates.com
    KIRKPATRICK & LOCKHART
     PRESTON GATES ELLIS LLP
    State Street Financial Center
    One Lincoln Street
    Boston, MA 02111
    617.261.3100

    Of Counsel:
    R. Bruce Allensworth
     bruce.allensworth@klgates.com
    Phoebe S. Winder
     phoebe.winder@klgates.com

January 8, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this **Certified Copy of State Court Record** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the following counsel of record via U.S. Mail on January 8, 2008:

David C. Engel, Esq.                                        William J. Amann, Esq.
ENGEL & ASSOCIATES, PLLC                       ABLITT & CHARLTON PC
21 Hampton Road                                           92 Montvale Ave. Suite 2950
Exeter, NH 03833                                           Stoneham, MA 02180

                                                                      /s/  Bradley C. Morin
                                                                      Bradley C. Morin

## DUNN V. AMERIQUEST MORTGAGE COMPANY ET AL.

## CERTIFIED STATE COURT RECORD (PART 1 OF 4)

# The State of New Hampshire

---

**Rockingham County**

    I, RAYMOND W. TAYLOR, Clerk of the Superior Court of the State of New Hampshire for

the County of Rockingham, the same being a court of record having a seal, do hereby certify

that I am the lawful custodian of the seal, files, records and proceedings of said Court, and also of

the files and records of the Supreme Judicial Court, the Court of Common Pleas, the Superior Court

of Judicature, the Circuit Court and the Supreme Court, heretofore existing in said state and that

I am by law the proper person to make out and certify copies thereof. And I further certify that

copies of all pleadings and correspondence filed in this court in case 07-E-632
Raymond P. Dunn and Linda C. Dunn v. Deutsche National Trust Company Trustee
of Ameriquest Mortgage Securities, Inc. and Ameriquest Mortgage Company.



    In witness whereof I have hereunto set my hand and affixed the seal of said Superior Court

this ........4th..... day of ........January............................., A. D. 19. 2008



                                                       , Clerk.

**INDEX**                         **DOCKET # 07-E-0632**

Vs.

Raymond P. Dunn                    Deutsche National Trust Company

Linda C. Dunn                      Trustee of Ameriquest Mtg. Securities

Atty. David C. Engel               Ameriquest Mortgage Company

**RETURN DAY:   January 2, 2008**          **TYPE OF CASE:   Foreclosure**

JURY REQUEST:                                    EXHIBITS   ( )IN BIN

Plf. ☐   Dft. ☐            CASH_____    ( )IN FILE

| DOC # | DOCUMENT  T H  12/5/07 | DATE |
|---|---|---|
| 1. | Verified Petition to Enjoin Foreclosure (ex parte relief)   11/27/07 | |
| 2 | Proposed Restraining Order   11/27/07 | |
| 3 | Order on Ex Parte Relief   11/27/07 | |
| 4 | Plfs MOt for Exparte Order Re: Serivce of Process   11/28/07  Ona 11/28/07 | |
| 5 | Order Re: Temp Hearing  12/5/07 | |
| 6 | Affidavit of Service on Dft's 12/7/07 | |
| 7 | Notice Undeliverable   12/17/07  (resent)to new address on 12/18/07) | |
| 8 | Notice Undeliverable 12/17/07  (resent on 12/18/07 to new address) | |
| 9 | Atty Bradley Morin appears for Ameriquest Mortgage Co. 12/26/07 | |

A TRUE COPY ATTEST

CLERK _____

# K&L|GATES

Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950

T  617.261.3100    www.klgates.com

RECEIVED
ROCKINGHAM
SUPERIOR COURT

2008 JAN -3  A 10: 20

January 2, 2008

Bradley C. Morin
D  617.951.9083
F  617.261.3175
brad.morin@klgates.com

**Via FedEx Overnight Delivery**

Clerk of Court
Rockingham County Superior Court
10 Route 125
Brentwood, NH 03833

Re:  <u>Dunn v. Ameriquest Mortgage Company, et al.</u>, 07-E-0632

Dear Sir or Madam:

    Enclosed for filing in the above-captioned matter, please find defendant Ameriquest Mortgage Company's Notice of Filing Notice of Removal (with <u>Exhibit A</u>, Notice of Removal filed in the United States District Court for the District of New Hampshire on January 2, 2008).

    Kindly acknowledge receipt and filing of same by stamping the enclosed copy of this letter and returning it in the enclosed self-addressed stamped envelope.

    Please prepare a certified copy of the state court record.  I will contact the clerk's office by telephone to arrange for payment and delivery or pickup, of the certified record so that I may file it electronically with the United States District Court.

    Thank you for your assistance in this matter.

Sincerely,

Bradley C. Morin

BCM/jo

Enclosure

cc:   R. Bruce Allensworth, Esq.
      Phoebe S. Winder, Esq.
      Gregory N. Blase, Esq.
      David C. Engel, Esq.
      William J. Amann, Esq.

BOS-1154196 v1

A TRUE COPY ATTEST
CLERK

**K&L|GATES**

Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

T 617.261.3100    www.klgates.com

RECEIVED
ROCKINGHAM
SUPERIOR COURT

2007 DEC 26  A 11: 08

December 21, 2007

Bradley C. Morin
D 617.951.9083
F 617.261.3175
brad.morin@klgates.com

**First Class Mail**

Clerk of Court
Rockingham County Superior Court
PO Box 1258
Kingston, NH 03848-1258

Re:    <u>Dunn v. Ameriquest Mortgage Company, et al.</u>, 07-E-0632

Dear Sir or Madam:

Enclosed for filing in the above-captioned matter, please find my appearance for Defendant Ameriquest Mortgage Company.

Kindly acknowledge receipt and filing of same by stamping the enclosed copy of this letter and returning it in the enclosed self-addressed stamped envelope.

Thank you for your assistance in this matter.

Sincerely,

Bradley C. Morin

BCM/jo

Enclosure

cc:    Phoebe S. Winder, Esq.
       David C. Engel, Esq.

A TRUE COPY ATTEST

CLERK

**ENGEL & ASSOCIATES, PLLC**
Attorneys at Law
Building One-Suite One
21 Hampton Road – Exeter, NH  03833



ROCKINGHAM
SUPERIOR COURT

2007 DEC -7  A 10: 51

Phone (603) 778-8535

Fax (603) 772-0226

December 6, 2007

Raymond Taylor, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, N.H. 03848-1258

> **Re:**     **Dunn v. Deutsche National Trust Company and Ameriquest Mortgage Company**
>
> **Docket No.  07-E-0632**

Dear Ray:

Enclosed herewith you will find Affidavit of Service of Process, for filing.

I have forwarded a copy of the foregoing to Ameriquest Mortgage Company and William J. Amann, Esquire.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

David C. Engel

DCE/tls
cc:    Raymond & Linda Dunn
        Ameriquest Mortgage Company
        William J. Amann, Esquire
E:\DAVID\Dunn, Linda C & Raymond P\Foreclosure\Ltr to RCSC enclosing Affidavit of Serivce of Process 120607.doc

A TRUE COPY ATTEST

CLERK

David C. Engel
Licensed in Massachusetts and New Hampshire

# THE STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH  03848 1258
603 642-5256

### NOTICE OF DECISION

DAVID C ENGEL
ENGEL & ASSOCIATES P A
21 HAMPTON ROAD
EXETER NH 03833

**07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al**

Please be advised that on 12/05/2007 Judge McHugh made the following order relative to:

**Court Order ;**
   Re: Temporary Hearing (copy enclosed)

12/05/2007                                    Raymond Taylor
                                              Clerk of Court

**Court Copy (sap)**

cc:  Deutsche National Trust Company
     Ameriquest Mortgage Company

AOC Form SUCP050 (Rev. 09/27/2001)

A TRUE COPY ATTEST

CLERK

# The STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH 03848 1258
603 642-5256

## NOTICE OF DECISION

DEUTSCHE NATIONAL TRUST COMPANY
TRUSTEE OF AMERIQUEST MTG SECURITIES
1 NEW HAMPSHIRE SUITE 225
NEWINGTON NH 03801

**07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al**

Please be advised that on 12/05/2007 Judge McHugh made the following order relative to:

**Court Order ;**
    Re: Temporary Hearing (copy enclosed)

12/05/2007

**Court Copy (sap)**

cc:  David C Engel
     Ameriquest Mortgage Company

Raymond Taylor
Clerk of Court

AOC Form SUCP050 (Rev. 09/27/2001)

A TRUE COPY ATTEST

CLERK

# ThE STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH 03848 1258
603 642-5256

## NOTICE OF DECISION

AMERIQUEST MORTGAGE COMPANY
1 NEW HAMPSHIRE SUITE 225
NEWINGTON NH 03801

**07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al**

Please be advised that on 12/05/2007 Judge McHugh made the following order relative to:

**Court Order ;**
   Re: Temporary Hearing (copy enclosed)

12/05/2007                                    Raymond Taylor
                                              Clerk of Court
**Court Copy (sap)**

cc:  David C Engel
     Deutsche National Trust Company

AOC Form SUCP050 (Rev. 09/27/2001)

A TRUE COPY ATTEST

CLERK

COPY

**ENGEL & ASSOCIATES, PLLC**
Attorneys at Law
Building One-Suite One
21 Hampton Road – Exeter, NH  03833

Phone (603) 778-8535

Fax (603) 772-0226

December 4, 2007

Raymond Taylor, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, N.H. 03848-1258

Re: **Dunn v. Deutsche National Trust Company and Ameriquest Mortgage Company**
Docket No. **07-E-0632**

Dear Ray:

Enclosed herewith you will find Affidavit of Service of Process, for filing.

I have forwarded a copy of the foregoing to Ameriquest Mortgage Company and William J. Amann, Esquire.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

David C. Engel

DCE/ch
cc:    Raymond & Linda Dunn
       Ameriquest Mortgage Company
       William J. Amann, Esquire
X:\DAVID\Dunn, Linda C & Raymond P\Foreclosure\Ltr to RCSC enclosing Affidavit of Serivce of Process 12 04 07.doc

A TRUE COPY ATTEST

CLERK

David C. Engel
Licensed in Massachusetts and New Hampshire

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss

SUPERIOR COURT
Docket No. 07-E-0632

Raymond P. Dunn
Linda C. Dunn

v.

Deutsche National Trust Company
and
Ameriquest Mortgage Company

## AFFIDAVIT OF SERVICE OF PROCESS

NOW COMES David C. Engel, attorney for the Plaintiffs in the above entitled matter having been duly sworn on oath deposes and says:

1.    That pursuant to Court Order the said David C. Engel forwarded by Certified Mail, Return Receipt Requested, Notice of the Temporary Hearing in the above entitled matter scheduled in the Rockingham County Superior Court for 9:00 AM on Wednesday, December 5, 2007, copies of the Certified Mail receipts being attached hereto marked Exhibit A.

2.    That only the Certified Mail Return Receipt Requested to the registered agent for Ameriquest Mortgage Company was returned, see Exhibit B attached hereto.

Dated:  December 4, 2007

David C. Engel

A TRUE COPY ATTEST

CLERK

State of New Hampshire
County of Rockingham

    Then personally appeared David C. Engel this 4th day of December, 2007, and took oath that the foregoing statements subscribed by him are true to the best of his knowledge and belief, before me

*Charlene R. Hempson*

~~Notary Public~~/Justice of the Peace
My Commission Expires: 11/05/08

## CERTIFICATION

    I hereby certify that a copy of the foregoing Affidavit of Service of Process has been forwarded on this 4th day of December, 2007 to William J. Amann, Esquire c/o Ablitt and Charlton, PC, 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180 counsel for the Defendant and AMC, Ameriquest Mortgage Services, P.O. Box 11000, Santa Ana, CA 92711-1000, Defendant.

David C. Engel

A TRUE COPY ATTEST

CLERK



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Article Sent To: National Reg. Agents

Postage $ 1.82
Certified Fee 2.65
Return Receipt Fee (Endorsement Required) 2.15
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $ 6.62

Postmark Here

Name (Please Print Clearly) (to be completed by mailer)
Street, Apt. No.; or PO Box No. 63 Pleasant Street
City, State, ZIP+4 Concord, NH 03301
PS Form 3800, July 1999    See Reverse for Instructions

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Article Sent To: William Amann

Postage $ 1.82
Certified Fee 2.65
Return Receipt Fee (Endorsement Required) 2.15
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $

Postmark Here

Name (Please Print Clearly) (to be completed by mailer)
92 Montvale Ave
Street, Apt. No.; or PO Box No. Stoneham MA 02180
City, State, ZIP+4
PS Form 3800, July 1999    See Reverse for Instructions



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Article Sent To: Ameriquest

Postage $ 1.82
Certified Fee 2.65
Return Receipt Fee (Endorsement Required) 2.15
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $ 6.62

Postmark Here

Name (Please Print Clearly) (to be completed by mailer)
Street, Apt. No.; or PO Box No. P.O. Box 11000
City, State, ZIP+4 Santa Ana CA 92711-100
PS Form 3800, July 1999    See Reverse for Instructions



A TRUE COPY ATTEST
CLERK

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**National Registered Agents, Inc.**
**63 Pleasant Street**
**Concord, NH  03301**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Georgette M Kent_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

_Georgette M Kent_    12/3/07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7099 3400 0002 8644 2402

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

A TRUE COPY ATTEST

CLERK _[signature]_

# The STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH  03848 1258
603 642-5256

## NOTICE OF DECISION

DAVID C ENGEL
ENGEL & ASSOCIATES P A
21 HAMPTON ROAD
EXETER NH 03833

07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al

Please be advised that on 11/28/2007 Judge McHugh made the following
order relative to:

**Motion for Ex Parte Orders ; Granted**
    Re: Service of Process/Certified Mail

11/28/2007                                        Raymond Taylor
                                                  Clerk of Court

**Court Copy (sap)**

AOC Form SUCP052 (Rev 09/27/2001)

A TRUE COPY ATTEST

CLERK _____

**ENGEL & ASSOCIATES, PLLC**
Attorneys at Law
Building One-Suite One
21 Hampton Road – Exeter, NH 03833

Phone (603) 778-8535                    2007 NOV 28 P 12 1 1                    Fax (603) 772-0226

November 28, 2007

Raymond Taylor, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, N.H. 03848-1258

    Re:    **Dunn v. Deutsche National Trust Company and Ameriquest Mortgage Company**
    Docket No.   **07-E-0632**

Dear Ray:

    Enclosed herewith you will find Motion for Ex Parte Order for Service of Process by Certified Mail Return Receipt Requested, for filing.

    I have forwarded a copy of the foregoing to Ameriquest Mortgage Company and William J. Amann, Esquire.

    If you have any questions, please do not hesitate to contact me.

                                        Very truly yours,

                                        David C. Engel

DCE/ch
cc:    Raymond & Linda Dunn
X:\DAVID\Ltr to RCSC enclosing Motion for Ex Parte Order for Serv of Proc by Cert Mail Return Receipt 11 28 07.doc

                            A TRUE COPY ATTEST
                    CLERK

                        David C. Engel
            Licensed in Massachusetts and New Hampshire

# THE STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH  03848 1258
603 642-5256

DAVID C ENGEL
ENGEL & ASSOCIATES P A
21 HAMPTON ROAD
EXETER NH 03833

- 07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al

Dear Atty. Engel:

Enclosed please find orders of notice for service upon the defendants.

| 11/28/2007 | /s/ Raymond Taylor |
|---|---|
| Date | Clerk of Court |

Court Copy (lzt)

AOC Form SUP150 (Rev. 05/09/2001)

# THE STATE OF NEW HAMPSHIRE
## Rockingham Superior Court
PO Box 1258
Kingston, NH  03848 1258
603 642-5256

## NOTICE OF DECISION

DAVID C ENGEL
ENGEL & ASSOCIATES P A
21 HAMPTON ROAD
EXETER NH 03833

07-E-0632 Raymond P. Dunn, et al vs. Deutsche National Trust, et al

Enclosed please find a copy of the Court's Order dated 11/27/2007
relative to:

Order - Pet for Ex Parte Relief

11/28/2007

Court Copy (lzt)

Raymond Taylor
Clerk of Court

AOC Form SUCP050 (Rev. 09/27/2001)

A TRUE COPY ATTEST

CLERK

07-E-632

# ENGEL & ASSOCIATES, PLLC

Attorneys at Law
Building One-Suite One
21 Hampton Road – Exeter, NH  03833

Phone (603) 778-8535

Fax (603) 772-0226

November 26, 2007

Raymond Taylor, Clerk
ROCKINGHAM COUNTY SUPERIOR COURT
P.O. Box 1258
Kingston, N.H. 03848-1258

**Re:  Dunn v. Deutsche National Trust Company et al**

Dear Ray:

Enclosed herewith you will Verified Petition to Enjoin Foreclosure and For Other Relief in the above entitled matter, for filing.

I have forwarded a copy of the foregoing to Ameriquest Mortgage Company and William J. Amann, Esquire.

If you have any questions, please do not hesitate to contact me.

Ve

Da

DCE/tls
cc:    client
X:\DAVID\Buonopane John & Odete Building Contract Breach\Ltr to RCSC Mtn to In

David C. Enge
Licensed in Massachusetts an

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss                                    SUPERIOR COURT

Raymond P. and Linda C. Dunn

v.

Deutsche National Trust Company
As Trustee of Ameriquest Mortgage Securities, Inc.
and
Ameriquest Mortgage Company

**<u>VERIFIED PETITION TO ENJOIN FORECLOSURE AND FOR OTHER RELIEF</u>**

NOW COME Raymond P. Dunn and Linda C. Dunn of 38 Norton Road, Hampton, County of Rockingham and State of New Hampshire and complain against Deutsch Bank National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc. and Ameriquest Mortgage Company and say:

1.      That the Plainitiffs as joint tenants with rights of survivorship own the real

estate located at 38 Norton Road, Hampton, County of Rockingham and State of New

Hampshire.

2.      That the Defendant Deutsch Bank National Trust Company is the

assignee of a mortgage originally granted by the Plaintiffs' to Ameriquest Mortgage

Company with a former address of 1 New Hampshire, Suite 225, Newington, New

Hampshire 03801 dated February 18, 2005 recorded in the Rockingham County

Registry of Deeds Book 4444 Page 0691 attached hereto marked Exhibit A.

3.      That at the time of the signing of the mortgage to Ameriquest Mortgage

Company, Mr. & Mrs. Dunn were gainfully employed.

4.      That on May 31, 2007 Mrs. Dunn was in a serious automobile accident

resulting in her inability to continue working.

A TRUE COPY ATTEST

CLERK *[signature]*

1

**STATE OF NEW HAMPSHIRE**

RECEIVED
ROCKINGHAM
SUPERIOR COURT

ROCKINGHAM, ss                                                    SUPERIOR COURT

2008 JAN -3 A 10: 20

RAYMOND P. DUNN
and LINDA C. DUNN,

        Plaintiffs,

                            DOCKET NO. 07-E-0632

v.

DEUTSCHE NATIONAL TRUST
COMPANY AS TRUSTEE OF
AMERIQUEST MORTGAGE
SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

        Defendants.

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Ameriquest Mortgage Company

("Ameriquest"), by and through its counsel, Kirkpatrick & Lockhart Preston Gates LLP, filed a

Notice of Removal in the United States District Court for the District of New Hampshire, a copy

of which is attached as Exhibit A, on January 2, 2008.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1441 and § 1446(d),

the filing of the Notice of Removal in the federal court, together with the filing of the copy of the

Notice of Removal in this Court, effects the removal of this action, and the state court action

shall proceed no further unless and until the case is remanded.

A TRUE COPY ATTEST

CLERK _____

10

Respectfully Submitted,

AMERIQUEST MORTGAGE COMPANY,

By its attorney,

Bradley C. Morin (Bar No. 17728)
brad.morin@klgates.com
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Of Counsel:
R. Bruce Allensworth
    bruce.allensworth@klgates.com
Phoebe S. Winder
    phoebe.winder@klgates.com
Gregory N. Blase
    gregory.blase@klgates.com

January 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this **Notice of Filing of Notice of Removal** will be sent to the following counsel of record via U.S. Mail on January 2, 2008:

David C. Engel, Esq.                    William J. Amann, Esq.
ENGEL & ASSOCIATES, PLLC                ABLITT & CHARLTON P.C.
21 Hampton Road                         92 Montvale Ave. Suite 2950
Exeter, NH 03833                        Stoneham, MA 02180

Bradley C. Morin

A TRUE COPY ATTEST

CLERK

- 2 -

A TRUE COPY ATTEST

CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

RAYMOND P. DUNN
and LINDA C. DUNN,

Plaintiffs,

v.

DEUTSCHE NATIONAL TRUST
COMPANY AS TRUSTEE OF
AMERIQUEST MORTGAGE
SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

Defendants.

CIVIL ACTION NO. _____

## NOTICE OF REMOVAL

Defendant Ameriquest Mortgage Company ("Ameriquest") hereby provides notice that it is removing this action originally commenced in the Superior Court for Rockingham County, New Hampshire, to the United States District Court for the District of New Hampshire.  In support thereof, defendant states as follows.

1.    Defendant exercises its rights under the provisions of 28 U.S.C. §§ 1331, 1332, 1441 and 1446, to remove this case from the Superior Court for Rockingham County, New Hampshire.

2.    On or about November 27, 2007, plaintiffs, Raymond P. Dunn and Linda C. Dunn filed a Verified Petition to Enjoin Foreclosure and for Other Relief ("Petition") in the Superior Court for Rockingham County, New Hampshire under the name and style of <u>Raymond P. and</u>

BOS-1152611 v5

A TRUE COPY ATTEST

CLERK _____

<u>Linda C. Dunn v. Deutsche National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc., and Ameriquest Mortgage Company</u>, Case No. 07-E-0632.[1]

3.    28 U.S.C. § 1441 (a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

4.    This is a case that was instituted in the Superior Court, Rockingham County, New Hampshire and has not been tried. The Dunns filed their Petition on or about November 27, 2007. <u>See</u> Exhibit 1 (State Court Documents, Petition). Defendant Ameriquest first received the initial pleading setting forth the claims for relief upon which this action is based and the Order of Notice on December 3, 2007. <u>See</u> Exhibit 1 (State Court Documents, National Registered Agents, Inc. Service of Process Summary Transmittal Form).

5.    As more fully set forth below, this case is properly removed to this Court under 28 U.S.C. § 1441 because this Court has original jurisdiction pursuant to: (1) 28 U.S.C. § 1331 because plaintiffs' claims arise under federal law; and (2) 28 U.S.C. § 1332(a) because the matter in controversy as set forth in the plaintiffs' pleading exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

---

[1]    A true and correct copy of the case materials served on Ameriquest ("State Court Documents") is attached hereto as <u>Exhibit 1</u>. (National Registered Agents, Inc. Service of Process Summary Transmittal Form, dated December 3, 2007; Order of Notice, dated November 28, 2007; Order on Motion for <u>Ex Parte</u> Order for Service of Process by Certified Mail Return Receipt Requested, dated November 28, 2007; Order on Petition for <u>Ex Parte</u> Restraining Order dated November 27, 2007; and Verified Petition to Enjoin Foreclosure and for Other Relief with Exhibits A, B and C, stamped November 27, 2007).

A TRUE COPY ATTEST

CLERK

- 2 -

I.    **SUBJECT MATTER JURISDICTION**

    A.    <u>Federal Question Jurisdiction Exists Pursuant to 28 U.S.C. § 1331.</u>

    6.    28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

    7.    Removal here is proper under 28 U.S.C. § 1441(a) because the Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, over plaintiffs' claims arising under federal law.

    8.    Among the "other relief" sought in the Petition, plaintiffs ask the Court to declare their mortgage loan "null and void." <u>See</u> <u>Exhibit 1</u> (State Court Documents, Petition, ¶¶ 12, 13, 15, Prayer for Relief, ¶¶ (f), (h)). Although it does not mention the statute by name, plaintiffs' Petition asserts claims under the federal Truth in Lending Act, 15 U.S.C. §§ 1601, <u>et seq.</u> ("TILA"). Specifically, Plaintiffs seek declaratory and injunctive relief, not only to prevent a foreclosure sale, but also to declare their mortgage "null and void" and to cancel their obligations and finance charges thereunder. <u>See</u> <u>Exhibit 1</u> (State Court Documents, Petition, Prayer for Relief , ¶¶ (f) (g) and (h)). Plaintiffs bring their claims "pursuant to the order of the Court in <u>In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation</u>, MDL No. 1715, Lead Case No. 05-cv-07097 (N.D. Ill.)." <u>See</u> <u>Exhibit 1</u> (State Court Documents, Petition, ¶¶ 12, 13, 15, Prayer for Relief , ¶ (h)). Indeed, plaintiffs' basis for seeking such relief appears to be a notice sent by Ameriquest Mortgage Company, pursuant to a federal court order, which was attached as an exhibit to the Petition. The notice informed the plaintiffs that "certain borrowers have challenged [Ameriquest's] practices <u>under the Truth in Lending Act</u>" and that they should review their transaction with an attorney to determine if they had an enforceable right to cancel. <u>See</u> <u>Exhibit 1</u> (State Court Documents, Petition and Exhibit C attached thereto) (emphasis added). The plaintiffs then purport to argue that their claim is timely under TILA's three-year

- 3 -

A TRUE COPY ATTEST
CLERK

extended right of rescission, 15 U.S.C. 1635(f).  See Exhibit 1 (State Court Documents, Petition, ¶ 15).

9.    Removal under federal question jurisdiction is proper "when the crux of [the] complaint, demonstrates that a right created by federal law is an essential element of [the] cause of action, appearing on the face of the complaint unaided by any answer or petition for removal." Chandler v. Perini Power Constructors, Inc., 520 F. Supp. 1152, 1155 (D. N.H. 1981). Furthermore, the United States Supreme Court held that federal question removal is proper when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  In the instant case, a right created by federal law – namely TILA – is essential to plaintiffs' claim for relief.  Plaintiffs rely on a federal court-ordered notice related to Ameriquest's disclosures under TILA, and such reliance appears on the face of the Petition (and exhibits thereto) as the basis on which plaintiffs seek to rescind and/or cancel their mortgage.  Correspondingly, as noted above, plaintiffs also appear to invoke TILA's three-year extended right of rescission, 15 U.S.C. 1635(f).  See Exhibit 1 (State Court Documents, Petition, ¶ 15).

10.    As such, plaintiffs' claims arise under federal law so as to present a federal question within the meaning of 28 U.S.C. § 1331, and thus the instant action is properly removed.

11.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other of plaintiffs' claims against defendants as to which it may not have original jurisdiction.

A TRUE COPY ATTEST

CLERK

**B.    Diversity Jurisdiction Exists Pursuant to 28 U.S.C. § 1332(a).**

    **1.    There is complete diversity of citizenship between Plaintiffs and Defendants.**

12.    In determining whether complete diversity exists, the Court considers the citizenship of all properly joined parties. 28 U.S.C. § 1441(b).

13.    The Petition states that the Dunns own a home at 38 Norton Road, Hampton, in the State of New Hampshire. See Exhibit 1 (State Court Documents, Petition, ¶ 1). For purposes of diversity of citizenship under 28 U.S.C. § 1332 the plaintiffs are citizens of the State of New Hampshire.[2]

14.    Ameriquest is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California. A "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." See 28 U.S.C. § 1332(c)(1). For purposes of diversity of citizenship under 28 U.S.C. § 1332, Ameriquest is a citizen of a state other than the State of New Hampshire.

15.    Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and Servicing Agreement Dated as of March 1, 2005, Without Recourse, (misnamed in the Petition as "Deutsche National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc." and hereinafter referred to as "Deutsche Bank, as Trustee"), is a national banking association. National banking associations are deemed "citizens of the States in which they are respectively

---

[2]    The Petition states that Raymond P. Dunn is "presently in the State of Florida seeking employment there," but there is no indication he has changed his domicile. See Petition ¶ 5. Regardless, Mr. Dunn's location in Florida would not affect the diversity of citizenship analysis because, as explained below, none of the defendants to this action are citizens of Florida for the purposes of diversity jurisdiction.

A TRUE COPY ATTEST

CLERK _____

located." See 28 U.S.C. § 1348. The United States Supreme Court held that this language means that a national banking association is a citizen of the State in which its main office, as set forth in its articles of association, is located. Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 307 (2006). The main office of Deutsche Bank, as Trustee is located in the State of California. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Deutsche Bank, as Trustee is a citizen of a state other than the State of New Hampshire.

    2.    **The amount in controversy exceeds $75,000, exclusive of interest and costs.**

16.    The Petition alleges that the Dunns entered into a mortgage loan with Ameriquest on February 18, 2005. See Exhibit 1 (State Court Documents, Petition, ¶ 1). The mortgage, a copy of which was attached to the Petition as an exhibit, states that the amount of this loan was $362,524, plus interest, to be paid over the course of 30 years. See Exhibit 1 (State Court Documents, Petition and Exhibit A thereto).

17.    The Petition alleges, among other things, that the Dunns are entitled to cancel their mortgage under an extended three-year right of rescission based on Ameriquest's alleged failure to provide the plaintiffs with proper notice of their right to cancel; and that the Dunns are entitled to "cancel any and all finance charges." See Exhibit 1 (State Court Documents, Petition, ¶¶ 12, 13, 15, Prayer for Relief, ¶¶ (f), (h)). Plaintiffs also seek an injunction to prevent foreclosure on the property. See Exhibit 1 (State Court Documents, Petition, Prayer for Relief, ¶ (g)).

18.    The jurisdictional amount in controversy requirement is satisfied because plaintiffs seek a declaration of the right to rescind their loan which was in an amount in excess of $75,000. See Exhibit 1 (State Court Documents, Petition and Exhibit A attached thereto).

A TRUE COPY ATTEST

CLERK *[signature]*

19.    The jurisdictional amount in controversy requirement is satisfied by plaintiffs'

attempt to rescind, and to obtain a declaration of their right to rescind their loan.  This Court

previously held in Bolduc v. Beal Bank, SSB, that in an action to prevent foreclosure on real

property, the amount in controversy was measured by the value of the mortgage notes.  994 F.

Supp. 82, 89 n. 3 (D.N.H. 1998), injunctive relief denied on other grounds, 167 F.3d 667 (1999).

In keeping with that reasoning, the First Circuit observed "[c]ourts have repeatedly held that the

value of the matter in controversy is measured not by the monetary judgment which the plaintiff

may recover but by the judgment's pecuniary consequences to those involved in the litigation."

Richard C. Young & Co., Ltd. v. Leventhal, D.D.S., M.S., 389 F.3d 1, 3 (1st Cir. 2004).  See

also Hunt v. Wash. State Apple Advt'g Comm'n, 432 U.S. 333, 347 (1977) (stating that "[i]n

actions seeking declaratory or injunctive relief, it is well established that the amount in

controversy [for purposes of diversity jurisdiction] is measured by the value of the object of the

litigation").  A plaintiff puts the entire value of the mortgage loan at issue where the plaintiff

seeks declaratory and injunctive relief against the enforcement of the mortgage contract.  See

Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elec., Inc., 120 F.3d 216, 220

(11th Cir. 1997) (stating that "plaintiff's claim for monetary *damages* need not, by itself, exceed

the requisite statutory amount because the immediate financial consequences of the litigation to

the plaintiff – in that case, the financial benefit of not having to pay the interest contracted to be

charged – may also be considered in calculating the amount in controversy") (emphasis in

original); see also Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000) (stating that "in

cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is

the amount in controversy"); Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Indus., Inc., No.

04-1949, 2005 WL 1154293, *1 (8th Cir. May 17, 2005) (stating that "the value of the object of

- 7 -

A TRUE COPY ATTEST

CLERK

litigation is not measured simply by the amount in alleged default,…but also by the value of the lease agreement if terminated").

20.    With respect to the Dunns, the principal and the finance charges payable, whether considered independently or in the aggregate, exceed $75,000.00, exclusive of interest and costs. As such, the amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

21.    Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of costs and interests, this Court has jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1332.

## II.    PROCEDURAL COMPLIANCE

22.    In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the receipt by Ameriquest of a copy of the Order of Notice and Petition in this case. Thus, defendant removes this matter without waiving any objections or defenses that it may have, including, without limitation, objections to sufficiency of process or sufficiency of service thereof.

23.    Pursuant to 28 U.S.C. § 1441, et seq., the right exists to remove this case from the Superior Court, Rockingham County, New Hampshire, to the United States District Court for the District of New Hampshire.

24.    Pursuant to 28 U.S.C. § 1446(a), attached hereto are true and correct copies of all process, pleadings and orders served upon Ameriquest.  See Exhibit 1 (State Court Documents).

25.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be served upon counsel for plaintiffs.

26.    Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the clerk of the Superior Court, Rockingham County, New

A TRUE COPY ATTEST

CLERK

Hampshire, as required by law, and served upon counsel for plaintiffs. <u>See</u> Notice of Filing

Notice of Removal, attached hereto as <u>Exhibit 2</u>.

27.  Defendant Deutsche Bank, as Trustee, has consented in writing to removal of this

action to the United States District Court for the District of New Hampshire. <u>See</u> Consent to

Removal, dated December 21, 2007, attached hereto as <u>Exhibit 3</u>.

**WHEREFORE**, defendant Ameriquest Mortgage Company hereby removes this case

from the Superior Court, Rockingham County, New Hampshire, where it is now pending, to this

honorable Court, and respectfully requests that this Court accept jurisdiction of this action, and

henceforth that this action be placed upon the docket of this Court for further proceedings, as

though this case had originally been instituted in this Court.

Respectfully Submitted,

AMERIQUEST MORTGAGE COMPANY,

By its attorney,

/s/ Bradley C. Morin
Bradley C. Morin (Bar No. 17728)
brad.morin@klgates.com
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Of Counsel:
R. Bruce Allensworth
    bruce.allensworth@klgates.com
Phoebe S. Winder
    phoebe.winder@klgates.com
Gregory N. Blase
    gregory.blase@klgates.com

January 2, 2008

- 9 -

A TRUE COPY ATTEST

CLERK

## CERTIFICATE OF SERVICE

I hereby certify that this **Notice of Removal** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the following counsel of record via U.S. Mail on January 2, 2008:

David C. Engel, Esq.
ENGEL & ASSOCIATES, PLLC
21 Hampton Road
Exeter, NH 03833

William J. Amann, Esq.
ABLITT & CHARLTON PC
92 Montvale Ave. Suite 2950
Stoneham, MA 02180

/s/ Bradley C. Morin
Bradley C. Morin

A TRUE COPY ATTEST

CLERK

# EXHIBIT 1

A TRUE COPY ATTEST

CLERK _____

*NATIONAL REGISTERED AGENTS, INC.*

*SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To:  DIANE TIBEREND, STE. 1200
     AMERIQUEST MORTGAGE COMPANY
     1100 TOWN & COUNTRY ROAD
     SUITE 1200
     ORANGE, CA 92868

SOP Transmittal # NH10325

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Defendant: AMERIQUEST MORTGAGE COMPANY
(Entity Served)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of  NEW HAMPSHIRE  on this  3  day of  December  ,  2007  . The following is a summary of the document(s) received:

1.  **Title of Action:** ORDER OF NOTICE

2.  **Document(s) served:**

    | | | |
    |---|---|---|
    | __ Summons | __ Subpoena | __ Injunction |
    | __ Complaint | __ Third Party Complaint | __ Notice of |
    | __ Petition | __ Demand for Jury Trial | __ Mechanics Lien |
    | __ Garnishment | __ Default Judgement | X  Other: ORDER OF NOTICE |

3.  **Court of Jurisdiction/**  ROCKINGHAM SUPERIOR COURT
    **Case & Docket Number:** 07-E-0632

4.  **Amount Claimed, if any:**

5.  **Method of Service** (select one):
    __ Personally served by:  __ Process Server  __ Deputy Sheriff  __ U. S Marshall
    X  Delivered Via:  X  Certified Mail  __ Regular Mail  __ Facsimile
                        (Envelope enclosed)      (Envelope enclosed)

    __ Other (Explain):

6.  **Date and Time of Service:** 12/3/2007 4:05:27 PM EST (GMT -5)

7.  **Appearance/Answer Date:** 12/5/07

8.  **Plaintiff's Attorney:**      David C. Engel
    (Name, Address & Telephone Number)   Engel & Associates, PLLC
                                   21 Hampton Road
                                   Building One - Suite One
                                   Exeter, NH 03833
                                   603-778-8535

9.  Federal Express Airbill # 790886504380

10. Call Made to: VM - DIANE TIBEREND, STE. 1200

11. **Special Comments:**

NATIONAL REGISTERED AGENTS, INC.                Copies To:

Transmitted by: Paula Harper

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

A TRUE COPY ATTEST

CLERK _____

**ENGEL & ASSOCIATES, PLLC**
Attorneys at Law
Building One-Suite One
21 Hampton Road – Exeter, NH  03833

Phone (603) 778-8535                                              Fax (603) 772-0226

November 28, 2007

CERTIFIED MAIL:  7099 3400 0002 8644 2402

**National Registered Agents, Inc.**
63 Pleasant Street
Concord, NH  03301

Re:      Dunn v. Deutsche Trust Co. and Ameriquest Mtg. Co.
Docket No.  07-E-0632

Dear Sir/Madam:

Enclosed herewith you will find Verified Petition to Enjoin Foreclosure and For
Other Relief with regard to the above entitled matter.

Please note that a hearing has been scheduled on December 5, 2007 at the
Rockingham County Superior Court at 9:00 a.m.

Very truly yours,

David C. Engel

DCE/tls
E:\DAVID\Dunn  Linda C & Raymond P\Foreclosure\Ltr service of process 112807.doc

David C. Engel
Licensed in Massachusetts and New Hampshire

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE
Rockingham Superior Court
PO Box 1258
Kingston, NH 03848 1258
603 642-5256

ORDER OF NOTICE

Raymond P. Dunn v. Deutsche National Trust Company
Linda C. Dunn    Ameriquest Mortgage Company

NO. 07-E-0632                              RETURN DAY:  01/02/2008

You have been sued and named as a party in a case filed with the
Rockingham Superior Court.  Attached is a copy of the pleading which
began this case.

Raymond P. Dunn, Linda C. Dunn shall notify each Defendant of the
above action by serving the defendant(s) by December 18, 2007 with a
copy of the pleading initiating the case, orders that the Court has
already issued, and this Order in a manner allowed by law.
Plaintiff shall file with the Clerk verification of the service
process by January 02, 2008.

IMPORTANT NOTICE TO Deutsche National Trust Company, Ameriquest
Mortgage Company:
You must file a written appearance form with the Clerk on or before
January 02, 2008.  You must also file by February 01, 2008 a plea,
answer or demurrer.  Send a copy of the appearance form and any
other documents filed with the court to the attorney for the party
filing the pleading or to the party if there is no attorney.  The
name and address of the attorney or the party filing the pleading is
contained in the pleading.  If you do not comply with these
requirements you will be considered in default, you will not have an
opportunity to dispute the claim(s) and the court may issue orders
in this matter which may affect you without your input.

NOTICE OF HEARING: A Hearing on the following matters is scheduled
for December 05, 2007 at 9:00 AM. at 10 Route 125 in Brentwood:

Temporary Hearing

Hearing will be limited to offers of proof, 15 minutes per party.
Motions for a more extended hearing will be addressed at this
hearing.  Parties against whom ex parte relief has been issued may
request a more immediate hearing.   Service of this notice must be
completed Two (2) days prior to hearing; otherwise, the Court may
dissolve any orders made ex parte or continue hearing to a later
date.

Please advise clients, witnesses, and others that it is a class B
felony to carry a firearm or other deadly weapon as defined in
RSA 625:11,V in a courtroom or area used by a court.

A TRUE COPY ATTEST

CLERK

07-E-0632                                                              Page  2
RE:`  Raymond P. Dunn, et al vs. Deutsche National Trust, et al

                              BY ORDER OF THE SUPERIOR COURT

11/28/2007

                              Raymond Taylor
                              Clerk of Court

AOC Form SUEP140 (Rev. 09/20/2001)

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE

2001 NOV 28  P 12: 1

ROCKINGHAM, ss                          SUPERIOR COURT
                                        Docket No. 07-E-0632

Raymond P. Dunn
Linda C. Dunn

v.

Duetsche National Trust Company
and
Ameriquest Mortgage Company

## MOTION FOR EX PARTE ORDER FOR SERVICE OF PROCESS BY CERTIFIED MAIL RETURN RECEIPT REQUESTED

NOW COME Raymond P. Dunn and Linda C. Dunn, Plaintiffs in the above entitled matter by their attorneys Engel & Associates, PLLC and say:

1.    That the Plaintiffs filed a Verified Petition to Enjoin Foreclosure and for Other Relief.

2.    That included in the prayers for relief was a request for ex parte restraining order.

3.    That this Honorable Court denied the ex parte restraining order and issued Orders of Notice for service of process on the two Defendants.

4.    That one Defendant is situate in Massachusetts and the other Defendant in California.

5.    That it has been the experience of Plaintiffs' counsel that when attempting to get service of process by a sheriff in a foreign jurisdiction, the cooperation in serving legal documents is slow at best.

A TRUE COPY ATTEST
CLERK _____

A TRUE COPY ATTEST
CLERK _____

6    That at this time the only address known to Plaintiffs' counsel for Ameriquest

Mortgage Company in California is a post office box and a sheriff cannot make service

at a post office box.

7.    That the Court has scheduled a temporary hearing for December 5, 2007 at 9:00

AM.

8.    That to the best knowledge and belief of Plaintiffs' counsel service of process by

a sheriff in California is unlikely and service of process by a sheriff in Massachusetts is

questionable by December 5, 2007

9.    That Plaintiffs counsel requests that this Honorable Court grant Plaintiffs' counsel

the right to serve the Defendants in the above entitled matter by Certified Mail, Return

Receipt Requested.

WHEREFORE it is respectfully requested that this Honorable Court:

A.    Grant Plaintiffs' counsel the right to serve the Defendants in the above

entitled matter by Certified Mail, Return Receipt Requested.

B.    And for such other and further relief as may be just.

Respectfully submitted,
Raymond P. & Linda C. Dunn
By their attorneys,
Engel & Associates, PLLC

Dated: November 28, 2007

By:
David C. Engel, Esq.
21 Hampton Road
Exeter, NH  03833
(603) 778-8535

A TRUE COPY ATTEST

CLERK

<u>CERTIFICATION</u>

    I hereby certify that a copy of the foregoing Motion for Ex Parte Order for Service of Process by Certified Mail Return Receipt Requested has been forwarded on this 28th day of November, 2007 to William J. Amann, Esquire c/o Ablitt and Charlton, PC, 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180 counsel for Defendant and AMC, Ameriquest Mortgage Services, P.O. Box 11000, Santa Ana, CA 92711-1000, Defendant.

David C. Engel

11/28/07

A TRUE COPY ATTEST

CLERK

HE STATE OF NEW HAMPSHIR₁

ROCKINGHAM COUNTY                                    SUPERIOR COURT

Raymond P. Dunn and  Linda C. Dunn

v.

Deutsche National Trust Company
Ameriquest Mortgage Company

07-E-632

ORDER on PETITION for *ex parte* RESTRAINING ORDER

After a review of the factual allegations set forth in the Petition for *ex parte* Restraining Order, the court makes the following ORDER:

_____ The Petition is GRANTED as the Court finds that immediate and irreparable injury, loss or damage will result to the Petitioner prior to a further hearing.      :
_____ The Proposed Order submitted by the Petitioner is APPROVED. See attached. A further hearing is to be scheduled within 10 days.  The Petitioner shall make service upon the Respondent.

__X__ The Petition is DENIED on an ex parte basis as it does not appear that immediate and irreparable injury, loss or damage will result to the Petitioner prior to a further hearing.  A hearing shall be scheduled ~~within 10 days,~~ allowing for service to be made upon the Respondent.     on December 5, 2007 at 9:00am

_____ The Petition is DISMISSED as:

_____ The facts contained within the Petition do not set forth a claim upon which equitable relief can be granted.
_____ The Petitioner appears to have an adequate remedy at law.
_____ This court does not have equitable jurisdiction over the claims set forth in the petition.

OTHER:

_____

_____

_____

SO ORDERED.

11/27/07.                1:30 pm                    _____
Date                    Time                         Presiding Justice

F:\wp\su\ja\orders\exparte equ

5

A TRUE COPY ATTEST

CLERK _____

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss                                        SUPERIOR COURT

Raymond P and Linda C. Dunn

v.

Deutsche National Trust Company
As Trustee of Ameriquest Mortgage Securities, Inc.
and
Ameriquest Mortgage Company

<u>PROPOSED TEMPORARY RESTRAINING ORDER</u>

1.     A Verified Petition to Enjoin Foreclosure and for Other Relief having been filed with the Rockingham County Superior Court, in the above entitled matter; it appears from the Verified Petition that the Defendants seek an imminent foreclosure of a mortgage on the property of the Plaintiffs.

2.     That further, an Order was issued in the action of "In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation," M.D.L. No 1715, Lead Case No 05-cv- 07097 (N.D. Ill.) by the Northern District of Illinois

3.     The Plaintiffs are entitled to an enforceable right to cancel their mortgage under that decision.

4.     That based on the Verified Petition instituting the above entitled matter it clearly appears from the specific facts that immediate and irreparable injury, loss and damage will result to the Petitioners if notice to the adverse parties is required prior to the Temporary Restraining Order being issued as the Defendants may foreclose on the Plaintiffs' dwelling house resulting in said irreparable harm to the Plaintiffs.  A Temporary Restraining Order is hereby granted temporarily restraining the Defendants from proceeding with the foreclosure of the Plaintiffs' property in Hampton, New

1

A TRUE COPY ATTEST

CLERK 

Hampshire. The said notice shall expire within ten (10) days of the signing of this

Order. The Plaintiffs shall issue Orders of Notice for a preliminary injunction in

accordance with Superior Court Rule 161 B.

_____          _____
Date                             Presiding Justice

2

A TRUE COPY ATTEST

CLERK

**DUNN V. AMERIQUEST MORTGAGE COMPANY ET AL.**

**CERTIFIED STATE COURT RECORD (PART 2 OF 4)**

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss                                           SUPERIOR COURT

Raymond P. and Linda C. Dunn

v.

Deutsche National Trust Company
As Trustee of Ameriquest Mortgage Securities, Inc.
and
Ameriquest Mortgage Company

## VERIFIED PETITION TO ENJOIN FORECLOSURE AND FOR OTHER RELIEF

NOW COME Raymond P. Dunn and Linda C. Dunn of 38 Norton Road,
Hampton, County of Rockingham and State of New Hampshire and complain against
Deutsch Bank National Trust Company as Trustee of Ameriquest Mortgage Securities,
Inc. and Ameriquest Mortgage Company and say:

1.      That the Plainitiffs as joint tenants with rights of survivorship own the real

estate located at 38 Norton Road, Hampton, County of Rockingham and State of New

Hampshire.

2.      That the Defendant Deutsch Bank National Trust Company is the

assignee of a mortgage originally granted by the Plaintiffs' to Ameriquest Mortgage

Company with a former address of 1 New Hampshire, Suite 225, Newington, New

Hampshire 03801 dated February 18, 2005 recorded in the Rockingham County

Registry of Deeds Book 4444 Page 0691 attached hereto marked Exhibit A.

3.      That at the time of the signing of the mortgage to Ameriquest Mortgage

Company, Mr. & Mrs. Dunn were gainfully employed.

4.      That on May 31, 2007 Mrs. Dunn was in a serious automobile accident

resulting in her inability to continue working.

1

A TRUE COPY ATTEST

CLERK

5    That the said Raymond P. Dunn lost his job in June 2007 and is presently in the State of Florida seeking employment there as employment opportunities are more numerous in the State of Florida.

6.    That at the time of the signing of the mortgage with Amerquest Mortgage Company, Ameriquest Mortgage Company never informed the Plaintiffs that in fact the mortgage was a variable interest rate mortgage.

7.    That at the time of signing the mortgage the Defendant assignor advised the Plaintiffs that the 18 page mortgage consisted of a lot of technical information the Plaintiffs did not need to read.

8.    That the Defendant assignor Ameriquest Mortgage Company indicated to the Plaintiff's where to sign the note and mortgage in question.

9.    That the interest rate kept increasing after the original mortgage was signed making it almost impossible for the Plaintiffs to make the mortgage payments.

10.    That at the present time the Plaintiffs' are in the process of obtaining refinancing to pay off the mortgage due and owing the assignor and/or the mortgagee in the above entitled matter.

11.    That the Plaintiffs cannot complete the refinancing of their property on or before the date set for the foreclosure, namely December 6, 2007 as is more particularly set forth in the Notice of Mortgagee's Sale of Real Estate attached hereto marked Exhibit B

12.    That by Ameriquest Mortgage Company letter dated November 20, 2007 Ameriquest Mortgage Company acknowledged that claims have been filed against Ameriquest for failure to provide proper notices of right to cancel to its borrowers as is

2

A TRUE COPY ATTEST

CLERK

more particularly set forth in the notice, a copy of which is attached hereto marked Exhibit C

13.    That the mortgage in question having been dated February 18, 2005 as is more particularly set forth in paragraph 2 of Exhibit C hereinabove, the mortgage in question is clearly within the three (3) year right to cancel the mortgage transaction.

14.    That the pending mortgage foreclosure sale clearly has not been completed.

15    That the mortgagors have the right to cancel the mortgage under the terms of the mortgage and the right to cancel the mortgage since it is less than three (3) years since the mortgage was originally written between the Plaintiffs and the Defendant mortgagee.

16.    That the Plaintiffs do not have sufficient time to re-mortgage the premises in question prior to the scheduled foreclosure

17    That the Plaintiffs require sixty (60) days to complete the refinancing of their property.

18.    That the value of the Plaintiffs property exceeds the balance due and owing on the mortgage.

19.    That the Plaintiffs have no adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court grant the following:

3

A TRUE COPY ATTEST

CLERK

EX PARTE RELIEF:

a.      Grant a temporary restraining order enjoining the scheduled foreclosure sale scheduled for December 6, 2007 or any adjourned date thereof, pending a hearing on the merits of this Petition.

b.      Grant such other and further ex parte relief as justice may require.

TEMPORARY RELIEF:

c.      Issue Orders of Notice to be served on the Defendants Ameriquest Mortgage Company, P O Box 11000, Santa Ana, California 92711-1000 and William J. Amann, Esq., 92 Montvale Avenue, Suite 2950, Stoneham, Massachusetts 02180.

d.      Grant a preliminary injunction enjoining the foreclosure sale scheduled for December 6, 2007 or any adjourned date thereof, pending a hearing on the merits of this Petition.

e.      Grant such other and further temporary relief as justice may require.

PERMANENT RELIEF:

f.      Declare the mortgage in question null and void and cancel any and all finance charges due and owing pursuant to the order of the Court in "In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation," M.D.L. No. 1715, Lead Case No. 05-cv 07097 (N.D Ill.).

g.      Permanently enjoin the foreclosure sale of the Plaintiffs property.

h.      Grant the Plaintiffs the cancellation of the mortgage as more particularly set forth at 38 Norton Road, Hampton, County of Rockingham and State of New Hampshire dated February 18, 2005 and recorded in the Rockingham County Registry of Deeds at Book 4444, Page 0691.

4

A TRUE COPY ATTEST

CLERK

i.    Order the Defendants to pay the Plaintiffs attorneys fees and costs

associated with this Petition.

j.    Grant such other and further relief as may be just.

Dated:  November 26, 2007

_Linda C. Dunn_
Linda C. Dunn

State of New Hampshire
Rockingham, ss

Personally appeared Linda C. Dunn, on November 26, 2007, who took oath that the foregoing statements are true to the best of her knowledge and belief, before me

_Charlene R. Hegion_
~~Notary Public~~/Justice of the Peace
My Commission Expires: Nov. 5, 2008

Respectfully submitted,
Raymond P. & Linda C Dunn
By her attorneys,
Engel & Associates, PLLC

Dated:  November 26, 2007

By _David C. Engel_
David C. Engel, Esq.
21 Hampton Road
Exeter, NH  03833
(603) 778-8535

5

A TRUE COPY ATTEST
CLERK _[signature]_

BK 4 4 4 4 PG 0 6 9 7

Return to:
Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By: Ameriquest Mortgage Company
Alison Hanson
One New Hampshire, Ste. 225
Newington, NH 03801

013831

2005 MAR -1 PM 2:41

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

———————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated February 18, 2005
together with all Riders to this document.
(B) "Borrower" is Raymond P Dunn and Linda  Dunn

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

NEW HAMPSHIRE Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3030  1/01
0110230125 - 7409

02/18/2005 9:34:47

AM6NH (0311)
Page 1 of 15                         Initials: _____
         VMP Mortgage Solutions (800)521-7291                      00000110230125030142 1601

A TRUE COPY ATTEST

CLERK _____

BK 4444 PG 0692

Lender is a Corporation
organized and existing under the laws of Delaware.
Lender's address is 1100 Town and Country Road, Suite 200 Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated February 18, 2005
The Note states that Borrower owes Lender three hundred sixty-two thousand five
hundred twenty-four and 00/100                                          Dollars
(U.S. $ 362,524.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2035.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

AM6NH (0311)                    Page 2 of 16                                     Form 3030  1/01

0110230125-7409

02/18/2005 9:34:47

0000011023012903014126802

A TRUE COPY ATTEST
CLERK _____

BK 4444 PG 0693

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender with mortgage covenants, and with power of sale, the following described property located in the

| County | of | ROCKINGHAM | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 0
38 Norton Rd.
Hampton
("Property Address"):

which currently has the address of
[Street]
[City], New Hampshire 03842
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

AM6NH (0311)
0110230125-7409

02/18/2005 9:34:47

Page 3 of 15

Initials: _____

Form 3030 1/01

0000011023012503D1421803

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 6 9 4

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or

AM6NH (0311)                          Page 4 of 15                 Initials: _____    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503014216D4

A TRUE COPY ATTEST

CLERK _____

BK 4444 PG 0695

encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____ /cb_____

AM6NH (0011)    Page 5 of 15    Form 3030 1/01

0110230125 - 7409

02/18/2005 9:34:47

0000011023012503014241605

A TRUE COPY ATTEST

CLERK _____

BK 4444 PG 0696

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

Initials: _____

AM6NH (0211)                                    Page 6 of 15                                    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

000001102301250301421606

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 6 9 7

promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

AM6NH (0311)                                    Page 7 of 15                Initials _____                Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

A TRUE COPY ATTEST

CLERK

BK 4444 PG 0698

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange

AM6NH (0011)                          Page 8 of 15                          Initials: _____ — Form 3030 1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503101421695

A TRUE COPY ATTEST

CLERK

BK 4444 PG 0699

for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest

Initials _____

AMGNH (0311)                    Page 9 of 15                    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 7 0 0

in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

AMGNH (0011)                        Page 10 of 15          Initials: _____          Form 3030 1/01

0110230125-7409

02/18/2005 9:34:47

000001102301259301421610

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 7 0 7

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement

Initials: 

AM6NH (0011)                     Page 11 of 15                     Form 3030  1/01

0110230125 -7409

02/18/2005  9:34:47

A TRUE COPY ATTEST

CLERK

BK 4444 PG 0702

by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

AM6NH (0011)                        Page 12 of 15                        Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 7 0 3

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale in the manner provided by Applicable Law to Borrower and other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender shall deliver to the purchaser Lender's deed conveying indefeasible title to the Property, discharged of all rights of redemption by Borrower. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Discharge. The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charges tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the Property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

24. Releases. Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and others interests in the Property.

25. Attorneys' Fees. Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

AM6NH (0011)                    Page 13 of 15        Initials _____        Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503301421613

A TRUE COPY ATTEST

CLERK _____

BK 4444 PG 0704

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Signed, sealed and delivered in the presence of:

_____        _____(Seal)
                                         Raymond P Dunn                -Borrower

_____        _____(Seal)
                                         Linda  Dunn                   -Borrower

_____(Seal)   _____(Seal)
                        -Borrower                               -Borrower

_____(Seal)   _____(Seal)
                        -Borrower                               -Borrower

_____(Seal)   _____(Seal)
                        -Borrower                               -Borrower

AM6NH (0311)                    Page 14 of 15                    Form 3030  1/01
0110230125 - 7409
02/18/2005 9:34:47 AM

000001102301250301421614

A TRUE COPY ATTEST

CLERK 

BK 4 4 4 4 PG 0 7 0 5

STATE OF NEW HAMPSHIRE,          County ss: Rockingham

The foregoing instrument was acknowledged before me this 15 February 2005 by
                                                          Day/Month/Year

Raymond P. Dunn and Linda C. Dunn

_____

_____

My Commission Expires:

Elizabeth A. Moreau
Notary Public, New Hampshire
My Commission Expires July 14, 2009



Notary Public/Justice of the Peace

C0000110230125030142161 5

400-15NH (01/04)                Page 15 of 15

0110230125 - 7409

02/18/2005 9:34:47 AM

A TRUE COPY ATTEST

CLERK

Exhibit A - Property Description          BK 4444 PG 0706

Closing date:                02/18/2005

Property
Address:                     38 Norton Road, Hampton, New Hampshire 03842

Loan Policy Number:

Owner Policy Number:         * NONE *

A certain tract or parcel of land, with the buildings thereon, situated on Norton Road, Town of Hampton, County of
Rockingham and State of New Hampshire, being Lot #4 on a plan entitled "Subdivision Plan for Thermo Homes, Inc.",
dated January 17, 1984 and recorded as Plan #D-12661, to which reference may be made for a more particular
description. Subject to a lot size requirements as cited on Plan #D-12661 and any and all easements and restrictions of
record; including memberships and/or ownerships of non-municipal water and/or sewer systems, if any.

©1986-2005 Standard Solutions, Inc. 781-324-0050

A TRUE COPY ATTEST

CLERK

BK 4 4 4 4 PG 0 7 0 7

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of February , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

38 Norton Rd., Hampton, NH 03842
                                            [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.850 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  March, 2007 , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials

Loan Number:  0110230125 - 7409

0000011023012503021560301

810-1 (Rev 1/31)                    Page 1 of 3                    02/18/2005 9:34:47 AM

A TRUE COPY ATTEST

CLERK

BK 4 4 4 4 PG 0 7 0 8

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding five and one-half percentage points ( 5.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 11.950% or less than 9.950%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 15.950%) or less than 9.950)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _____

Loan Number:  0110230125 - 7409

000001102301250302190302

810-2 (Rev 1/01)                    Page 2 of 3

02/18/2005 9:34:47 AM

A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 7 0 9

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Raymond P. Dunn_ (Seal)     _Linda C. Dunn_ (Seal)
Borrower Raymond P Dunn          Borrower Linda Dunn

_____ (Seal)     _____ (Seal)
Borrower                              Borrower

Loan Number: 0110230125 - 7409


0000011023012503021503003

6103 (Rev 1/01)                    Page 3 of 3                    02/18/2005 9:34:47 AM

A TRUE COPY ATTEST

CLERK _____

Exhibit B

**ABLITT & CHARLTON, P.C.**
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone: (781) 246-8995
Fax: (781) 246-8994

BY REGULAR AND CERTIFIED MAIL

11/05/2007

Linda Dunn
38 Norton Road
Hampton, NH 03842
4.2286 / Dunn

### NOTICE OF MORTGAGE FORECLOSURE SALE

Re:    Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities,
Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and
Servicing Agreement Dated as of March 1, 2005, Without Recourse/ Raymond P. Dunn
and Linda Dunn

Property Address: 38 Norton Road, Hampton, NH 03842

Dear Linda Dunn,

Pursuant to N.H. Rev. Stat. Ann. §479.25 et seq., as amended, enclosed is a copy of the Notice of
Mortgagee's Sale of Real Estate.

This notice is provided to you because an examination of the record title shows that you held an
interest of record in the property thirty (30) days prior to the sale.

Our experience has shown us that you are likely to benefit if you allow qualified bidders at the
foreclosure sale to enter and inspect the premises. This may result in a higher purchase price

If you are willing to allow qualified bidders to enter and inspect the premises, please be present at the
time of the foreclosure sale.

Very truly yours,

Present holder of mortgage
By its Attorney,

William J. Amann, Esq.
4.2286 / Dunn
CERTIFIED MAIL NO. 7007 2560 0001 6335 7747
RETURN RECEIPT REQUESTED

A TRUE COPY ATTEST

CLERK

NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Raymond P. Dunn and Linda Dunn to Ameriquest Mortgage Company, dated February 18, 2005 and recorded with the Rockingham County Registry of Deeds at Book 4444, Page 691, of which mortgage Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and Servicing Agreement Dated as of March 1, 2005, Without Recourse is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing, the same will be sold at Public Auction at 2:00 PM on December 6, 2007, on the mortgaged premises located at 38 Norton Road, Hampton, NH 03842 all and singular the premises described in said mortgage,

TO WIT.

A certain tract or parcel of land, with the buildings thereon, situated on Norton Road, Town of Hampton, County of Rockingham and State of New Hampshire, being Lot #4 on a plan entitled "Subdivision Plan for Thermo Homes, Inc.", dated January 17, 1984 and recorded as Plan #D-12661, to which reference may be made for a more particular description. Subject to a lot size requirements as cited on Plan #D-12661 and any and all easements and restrictions of record; including memberships and/or ownerships of non-municipal water and/or sewer systems, if any.

For mortgagors' title see deed recorded with Rockingham County Registry of Deeds in Book 3247, Page 2353

NOTICE. PURSUANT TO NEW HAMPSHIRE RSA 479:25 YOU ARE HEREBY NOTIFIED THAT YOU HAVE A RIGHT TO PETITION THE SUPERIOR COURT FOR THE COUNTY IN WHICH THE MORTGAGED PREMISES ARE SITUATED WITH SERVICES UPON THE MORTGAGEE, AND UPON SUCH BOND AS THE COURT MAY REQUIRE TO ENJOIN THE SCHEDULED FORECLOSURE SALE

A TRUE COPY ATTEST

CLERK _____

These premises will be sold and conveyed subject to and with the benefit of all rights, rights of way, restrictions, easements, covenants, liens or claims in the nature of liens, improvements, public assessments, any and all unpaid taxes, tax titles, tax liens, water and sewer liens and any other municipal assessments or liens or existing encumbrances of record which are in force and are applicable, having priority over said mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed.

TERMS OF SALE:

A deposit of TEN THOUSAND ($10,000.00) DOLLARS by certified or bank check will be required to be paid by the purchaser at the time and place of sale. The balance is to be paid by certified or bank check at Ablitt & Charlton, P.C., 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180, other terms and conditions will be provided at the place of sale. The description of the premises contained in said mortgage shall control in the event of an error in this publication.

OTHER TERMS, IF ANY, TO BE ANNOUNCED AT THE SALE.

Present holder of said mortgage

By its Attorneys,

_____
Ablitt & Charlton, P.C.
William J. Amann, Esq.
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone (781) 246-8995
Fax: (781) 246-8994

Dated: 11/05/2007

4.2286 / Dunn

A TRUE COPY ATTEST

CLERK _____

Exhibit C



November 20, 2007

DUNN RAYMOND P
38 NORTON RD
HAMPTON, NH 03842

VIA Certified Mail RRR and First Class M
Article No  7102 6189 3060 1132 5261

Loan Number:     0110230125
Property Address:  38 NORTON RD, HAMPTON NH, 03842

Dear Homeowner(s):

Certain borrowers have challenged Ameriquest Mortgage Company's ("Ameriquest") practices under the Truth in Lending Act. They claim that Ameriquest has not provided proper Notices of Right to Cancel to its borrowers. Borrowers who did not receive a legally sufficient Notice of Right to Cancel have up to three years to cancel their mortgage transaction (four years in Massachusetts). The right to cancel ends if there is a completed foreclosure sale.

You have been identified as someone whose Ameriquest loan is subject to a foreclosure sale in the near future. You should review your transaction with an attorney or legal services organization to determine if you have an enforceable right to cancel and whether it is in your interest to cancel.

If you cancel, a court will need to determine if your cancellation is effective. If a court determines that your cancellation is effective, your mortgage will be void and you will not have to pay any finance charges. Instead, you will have to immediately repay any unpaid principal amount (for example, by refinancing your loan).

This Notice is being given to you pursuant to an order of the Court in "*In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation*," M.D.L. No. 1715, Lead Case No. 05-cv 07097 (N.D. Ill.). Please do not call the Court.

Sincerely,

Ameriquest Mortgage Company

A TRUE COPY ATTEST

CLERK

# EXHIBIT 2

A TRUE COPY ATTEST

CLERK

## STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss                                           SUPERIOR COURT

RAYMOND P. DUNN
and LINDA C. DUNN,

        Plaintiffs,

v.                                                    DOCKET NO. 07-E-0632

DEUTSCHE NATIONAL TRUST
COMPANY AS TRUSTEE OF
AMERIQUEST MORTGAGE
SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

        Defendants.

### <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Ameriquest Mortgage Company

("Ameriquest"), by and through its counsel, Kirkpatrick & Lockhart Preston Gates LLP, filed a

Notice of Removal in the United States District Court for the District of New Hampshire, a copy

of which is attached as <u>Exhibit A</u>, on January 2, 2008.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1441 and § 1446(d),

the filing of the Notice of Removal in the federal court, together with the filing of the copy of the

Notice of Removal in this Court, effects the removal of this action, and the state court action

shall proceed no further unless and until the case is remanded.

BOS-1153876 v1

A TRUE COPY ATTEST

CLERK _____

Respectfully Submitted,

AMERIQUEST MORTGAGE COMPANY,

By its attorney,

_Bradley Morin_

Bradley C. Morin (Bar No. 17728)
brad.morin@klgates.com
KIRKPATRICK & LOCKHART
 PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Of Counsel:
R. Bruce Allensworth
 bruce.allensworth@klgates.com
Phoebe S. Winder
 phoebe.winder@klgates.com
Gregory N. Blase
 gregory.blase@klgates.com

January 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this **Notice of Filing of Notice of Removal** will be sent to the following counsel of record via U.S. Mail on January 2, 2008:

David C. Engel, Esq.
ENGEL & ASSOCIATES, PLLC
21 Hampton Road
Exeter, NH 03833

William J. Amann, Esq.
ABLITT & CHARLTON P.C.
92 Montvale Ave. Suite 2950
Stoneham, MA 02180

_Bradley Morin_

Bradley C. Morin

- 2 -

A TRUE COPY ATTEST
CLERK _[signature]_

## CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Dunn, Raymond P.
Dunn, Linda C.

**DEFENDANTS**

(1) Ameriquest Mortgage Company and (2) Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and Servicing Agreement Dated as of March 1, 2005, Without Recourse

**(b)** County of Residence of First Listed Plaintiff     Rockingham
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed     Orange County, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm, Name, Address, and Telephone Number)

(See Attached Appendix A)

Attorneys (If Known)

(See Attached Appendix A)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Plaintiff | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnations | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION**

(Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. § 1332, 15 U.S.C. §§ 1601 et seq.

Brief statement of cause:
Plaintiffs seek to enjoin foreclosure of real property and rescind mortgage loan, alleging violation of Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND    Declaratory relief and equitable relief, monetary damages, costs and attorney fees

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE                     DOCKET NUMBER

DATE: January 2, 2008     SIGNATURE OF ATTORNEY OF RECORD     Bradley ...

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE

A TRUE COPY ATTEST

CLERK

APPENDIX A – COUNSEL OF RECORD

Plaintiffs Raymond P. and Linda C. Dunn
    David C. Engel
    ENGEL & ASSOCIATES, PLLC
    21 Hampton Road
    Exeter, NH 03833
    603) 778-8535

Defendant Ameriquest Mortgage Company
    Bradley C. Morin
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    State Street Financial Center, One Lincoln Street
    Boston, MA 02111
    (617) 261-3100
    brad.morin@klgates.com

Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and Servicing Agreement Dated as of March 1, 2005, Without Recourse
    William J. Amann
    ABLITT & CHARLTON P.C.
    92 Montvale Ave. Suite 2950
    Stoneham, MA 02180
    (781) 246-8995
    WAMANN@ACDLAW.COM

A TRUE COPY ATTEST

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

RAYMOND P. DUNN
and LINDA C. DUNN,

        Plaintiffs,

v.

DEUTSCHE NATIONAL TRUST
COMPANY AS TRUSTEE OF
AMERIQUEST MORTGAGE
SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

        Defendants.

CIVIL ACTION NO. _____

## AMERIQUEST MORTGAGE COMPANY'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, and Local Rule 7.5 of the United States District Court for the District of New Hampshire, defendant Ameriquest Mortgage Company ("Ameriquest") hereby discloses that it is a wholly owned subsidiary of ACC Capital Holdings Corporation and that there is no publicly held company that owns 10% or more of Ameriquest's stock.

A TRUE COPY ATTEST

CLERK _____

Respectfully Submitted,

AMERIQUEST MORTGAGE COMPANY,

By their attorney,

/s/ Bradley C. Morin
Bradley C. Morin (Bar No. 17728)
brad.morin@klgates.com
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.261.3100

Of Counsel:
R. Bruce Allensworth
    bruce.allensworth@klgates.com
Phoebe S. Winder
    phoebe.winder@klgates.com
Gregory N. Blase
    gregory.blase@klgates.com

January 2, 2008

## CERTIFICATE OF SERVICE

    I hereby certify that this **Ameriquest Mortgage Company's Corporate Disclosure Statement** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the following counsel of record via U.S. Mail on January 2, 2008:

David C. Engel, Esq.
ENGEL & ASSOCIATES, PLLC
21 Hampton Road
Exeter, NH 03833

William J. Amann
ABLITT & CHARLTON P.C.
92 Montvale Ave. Suite 2950
Stoneham, MA 02180


    /s/  Bradley C. Morin
    Bradley C. Morin

- 2 -



A TRUE COPY ATTEST

CLERK

**DUNN V. AMERIQUEST MORTGAGE COMPANY ET AL.**

**CERTIFIED STATE COURT RECORD (PART 3 OF 4)**

# EXHIBIT 3

A TRUE COPY ATTEST

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

RAYMOND P. DUNN
and LINDA C. DUNN,

        Plaintiffs,

v.

DEUTSCHE NATIONAL TRUST COMPANY
AS TRUSTEE OF AMERIQUEST
MORTGAGE SECURITIES, INC. and
AMERIQUEST MORTGAGE COMPANY

        Defendants.

CIVIL ACTION NO. _____

## CONSENT TO REMOVAL

Defendant Deutsche Bank National Trust Company, as Trustee consents to the removal

of the action styled Dunn, et al. v. Deutsche National Trust Company, et al., Rockingham

Superior Court No. 07-E-0632 to the United States District Court for the District of New

Hampshire from the Rockingham Superior Court per the Notice of Removal filed by Defendant

Ameriquest Mortgage Company.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE,

By its attorney,

/s/ William J. Amann (with permission)
William J. Amann (Bar No. 14866)
ABLITT & CHARLTON P.C.
92 Montvale Ave. Suite 2950
Stoneham, MA 02180
(781) 246-8995
WAMANN@ACDLAW.COM

Dated: December 21, 2007

BOS-1152728 v2

A TRUE COPY ATTEST

CLERK

## Complaints and Other Initiating Documents
1:08-at-02008 New Cases filed by Attorneys/2008

### U.S. District Court

### District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered by Morin, Bradley on 1/2/2008 at 6:52 PM EST and filed on 1/2/2008
**Case Name:**          New Cases filed by Attorneys/2008
**Case Number:**        1:08-at-2008
**Filer:**
**Document Number:** 2

**Docket Text:**
New Case/Notice of Removal entitled Raymond P. and Linda C. Dunn v. Deutsche National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc. and Ameriquest Mortgage Company filed. (Filing fee $350, receipt number 359722.) (Attachments: # (1) Exhibit 1 - State Court Documents# (2) Exhibit 2 - State Court Notice of Filing Notice of Removal# (3) Civil Cover Sheet # (4) Ameriquest Mortgage Company's Corporate Disclosure Statement# (5) Exhibit 3 - Consent to Removal by Deutsche Bank National Trust Company, as Trustee)(Morin, Bradley)

**1:08-at-2008 Notice has been electronically mailed to:**

**1:08-at-2008 Notice, to the extent appropriate, must be delivered conventionally to:**

New Cases

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-0]
[9d37da40ae59a92710fb46df26fb972ad4133bed764df90c087dd0eb184d3badaee7e
981a55a2d042f2119409eee74c64b2c71a02d771a684cffce3162882893]]
**Document description:**Exhibit 1 - State Court Documents
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-1]
[46719754eaa6abf987fedcd3aae7258587129c80f6593c5a93aa64e893fdcac6d5052
ab988fdd7c87343f50da8f7d4670e15887ab16d17f357ed3485b3ea8a54]]
**Document description:**Exhibit 2 - State Court Notice of Filing Notice of Removal
**Original filename:**n/a
**Electronic document Stamp:**

A TRUE COPY ATTEST

CLERK

[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-2]
[312d82abc79295901ebd482fa66da169ac09eac8c87b96896cd60a322841e779fd95a
d032b739bfb2be8e81c35d505a8188efd29e1fb4109da679e3bf5644165]]
**Document description:**Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-3]
[71b95d75a012160e0088fc5d4b05245191d3b33c3c32117cefc66f7ca36799ea70f6a
22e0c92b562c7d6865a4747d59cdefc0e9d549a790bfae4f276a65ab7bf]]
**Document description:** Ameriquest Mortgage Company's Corporate Disclosure Statement
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-4]
[0382590a53091bbb1592c265fc14ec5fe8c0a040e63fd125271270f9bb07e181cb6ad
fa701df267588a8147417aa95be8e744649f7548e000c7fbfd88ad08d89]]
**Document description:**Exhibit 3 - Consent to Removal by Deutsche Bank National Trust Company, as
Trustee
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1045603718 [Date=1/2/2008] [FileNumber=382514-5]
[2845d100ed86a4dcaa0a35df21fc0fa1ea9c4c917ced3a9dfd5e9974ca89a3f82d464
c31df93e77db7638b5c2434af6e87f887c21cd4965cd9e9a6a7d94dc343]]

A TRUE COPY ATTEST

CLERK

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: **Rockingham Superior Court**

Case Name: **Dunn v. Ameriquest Mortgage Company, et al.**

Case Number: **07-E-0632**
(if known)

RECEIVED
ROCKINGHAM
SUPERIOR COURT

### APPEARANCE/WITHDRAWAL

2007 DEC 26  A II: 08

Returnable on the first Tuesday of <u>January 2008</u>

(FOR SUPERIOR COURT USE ONLY)

☐ COURT

☐ JURY

---

| APPEARANCE | WITHDRAWAL |
|---|---|
| Please enter my appearance as | Please withdraw my appearance as |
| ☑ Counsel for | ☐ Counsel for |
| **Ameriquest Mortgage Company** | |
| | _____ |
| | _____ |
| ☐ *Pro se* | Notice of Withdrawal sent to my clients on: |
| | _____ |
| _____ | at the following address: |
| | _____ |
| | _____ |

FOR LANDLORD AND TENANT ACTION ONLY:

☐ Check here if you are requesting a sound recording

I hereby certify that duplicates of this notice were

☐ delivered   ☑ mailed   to:   **David C. Engel, Esq.**
**Engel & Associates, PLLC**
**21 Hampton Road**
**Exeter, NH 03833**

On:  **December 21, 2007**

Signed: *Bradley Morin*

Bradley C. Morin  #17728

Address: Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street, Boston, MA 02111

Telephone: 617-951-9083

A TRUE COPY ATTEST

CLERK *[signature]*

**APPEARANCE/WITHDRAWAL**

ROCKINGHAM
SUPERIOR COURT

2007 DEC 17  A 10: 00

NIXIE        031    DC 1

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 03848125858        *1865-11713

12/18/07

Resent Notice to
Deutsche National Bank
/O William J. Amarn, Esq.
2 Montvale Ave, Suite 2950
coneham, MA 02180

*Clerk of Superior Court*
*NH Superior Court, Rockingham County*
*P.O. Box 1258*
*Kingston, NH 03848-1258*

8

A TRUE COPY ATTEST

CLERK



RECEIVED
ROCKINGHAM
SUPERIOR COURT

2007 DEC 17 A 10:10

NIXIE    031  DC  1    00 12/13/07

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

*1863-11714-05-41

C: 03048125858

12/18/07

Resent Notice to
Ameriquest Mortgage Company
@ PO Box 11000
Santa Ana, CA 92711-1000

Clerk of Superior Court
NH Superior Court, Rockingham County
P.O. Box 1258
Kingston, NH 03848-1258

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE

RECEIVED
ROCKINGHAM
SUPERIOR COURT

ROCKINGHAM, ss

SUPERIOR COURT
07-E-0632

2007 DEC -7 A 10: 51

Raymond P. Dunn
Linda C. Dunn

v.

Deutsche National Trust Company
and
Ameriquest Mortgage Company

### AFFIDAVIT OF SERVICE OF PROCESS

NOW COMES David C. Engel, attorney for the Plaintiffs in the above entitled matter, having been duly sworn, on oath deposes and says:

1.     That pursuant to Court Order the said David C. Engel forwarded by Certified Mail, Return Receipt Requested, Orders of Notice in the above entitled matter to the Defendants. the Certified Mail Return Receipts from the Defendants are attached hereto marked Exhibit A.

Dated:  December 6, 2007

David C. Engel

State of New Hampshire
County of Rockingham

Then personally appeared David C. Engel this **6**th day of December, 2007, and took oath that the foregoing statements subscribed by him are true to the best of his knowledge and belief, before me

Notary Public/Justice of the Peace
My Comm. Exp.
Terri Spinney
NOTARY PUBLIC
New Hampshire
My Commission Expires  6/21/11

A TRUE COPY ATTEST

CLERK

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing Affidavit of Service of Process has been forwarded on this 6th day of December, 2007 to William J. Amann, Esquire, Ablitt and Charlton, PC, 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180 counsel for the Defendant and AMC Ameriquest Mortgage Services, P.O. Box 11000, Santa Ana, CA 92711-1000, Defendant.

David C. Engel

A TRUE COPY ATTEST

CLERK

Exhibit A

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AMC
**Ameriquest Mortgage Services**
P.O. Box 11000
Santa Ana, CA 92711-1000

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7099 3400 0002 8644 1573

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**William J. Amann, Esquire**
Ablitt and Charlton, PC
92 Montvale Avenue
Suite 2950
Stoneham, MA 02180

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Laura Manson   ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☑ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7099 3400 0002 8644 1603

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

A TRUE COPY ATTEST

CLERK _____

# The State of New Hampshire

Raymond P. Dunn and Linda C. Dunn v.
Deutsche National Trust Company Trustee of Ameriquest
Mfg Securities Ameriquest Mortgage Company

07-E-632

Docket No.

## ORDER ON DOCUMENT NO. _____

Plaintiff's request for injunction of foreclosure scheduled for December 6, 2007 is granted. Foreclosure cannot be held prior to February 6, 2008 unless the defendant appears and shows good cause for having the foreclosure held sooner.

A TRUE COPY ATTEST

CLERK _____

December 5, 2007
Date

_____
Signature
Presiding Justice

ORDER



THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss

SUPERIOR COURT
Docket No. 07-E-0632

Raymond P. Dunn
Linda C. Dunn

v.

Duetsche National Trust Company
and
Ameriquest Mortgage Company

## MOTION FOR EX PARTE ORDER FOR SERVICE OF PROCESS BY CERTIFIED MAIL RETURN RECEIPT REQUESTED

NOW COME Raymond P. Dunn and Linda C. Dunn, Plaintiffs in the above entitled matter by their attorneys Engel & Associates, PLLC and say:

1.      That the Plaintiffs filed a Verified Petition to Enjoin Foreclosure and for Other Relief.

2.      That included in the prayers for relief was a request for ex parte restraining order.

3.      That this Honorable Court denied the ex parte restraining order and issued Orders of Notice for service of process on the two Defendants.

4.      That one Defendant is situate in Massachusetts and the other Defendant in California.

5.      That it has been the experience of Plaintiffs' counsel that when attempting to get service of process by a sheriff in a foreign jurisdiction, the cooperation in serving legal documents is slow at best.

A TRUE COPY ATTEST

CLERK _____

6.     That at this time the only address known to Plaintiffs' counsel for Ameriquest Mortgage Company in California is a post office box and a sheriff cannot make service at a post office box.

7.     That the Court has scheduled a temporary hearing for December 5, 2007 at 9:00 AM.

8.     That to the best knowledge and belief of Plaintiffs' counsel service of process by a sheriff in California is unlikely and service of process by a sheriff in Massachusetts is questionable by December 5, 2007.

9.     That Plaintiffs counsel requests that this Honorable Court grant Plaintiffs' counsel the right to serve the Defendants in the above entitled matter by Certified Mail, Return Receipt Requested.

       WHEREFORE it is respectfully requested that this Honorable Court:

A.     Grant Plaintiffs' counsel the right to serve the Defendants in the above entitled matter by Certified Mail, Return Receipt Requested.

B.     And for such other and further relief as may be just.

                              Respectfully submitted,
                              Raymond P. & Linda C. Dunn
                              By their attorneys,
                              Engel & Associates, PLLC


Dated: November 28, 2007

                              By David C. Engel, Esq.
                              21 Hampton Road
                              Exeter, NH  03833
                              (603) 778-8535


                    A TRUE COPY ATTEST

                    CLERK

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing Motion for Ex Parte Order for Service of Process by Certified Mail Return Receipt Requested has been forwarded on this 28th day of November, 2007 to William J. Amann, Esquire c/o Ablitt and Charlton, PC, 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180 counsel for Defendant and AMC, Ameriquest Mortgage Services, P.O. Box 11000, Santa Ana, CA 92711-1000, Defendant.

David C. Engel

11/28/07

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                                    SUPERIOR COURT

Raymond P. Dunn and Linda C. Dunn

v.

Deutsche National Trust Company
Ameriquest Mortgage Company

07-E-632

## ORDER on PETITION for *ex parte* RESTRAINING ORDER

After a review of the factual allegations set forth in the Petition for *ex parte* Restraining Order, the court makes the following **ORDER**:

_____ The Petition is **GRANTED** as the Court finds that immediate and irreparable injury, loss or damage will result to the Petitioner prior to a further hearing.
_____ The Proposed Order submitted by the Petitioner is **APPROVED**. See attached. A further hearing is to be scheduled within 10 days. The Petitioner shall make service upon the Respondent.

__X__ The Petition is **DENIED on an ex parte basis** as it does not appear that immediate and irreparable injury, loss or damage will result to the Petitioner prior to a further hearing. A hearing shall be scheduled ~~within 10 days,~~ allowing for service to be made upon the Respondent. *on December 5, 2007 at 9:00am*

_____ The Petition is **DISMISSED** as:

_____ The facts contained within the Petition do not set forth a claim upon which equitable relief can be granted.
_____ The Petitioner appears to have an adequate remedy at law.
_____ This court does not have equitable jurisdiction over the claims set forth in the petition.

OTHER:

_____

_____

A TRUE COPY ATTEST

CLERK *[signature]*

SO ORDERED.

11/27/07                1:30 pm                *[signature]*
Date                     Time                    Presiding Justice

F:\wp\su\jai\orders\exparte.equ

3

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss                                    SUPERIOR COURT

Raymond P. and Linda C. Dunn

v.

Deutsche National Trust Company
As Trustee of Ameriquest Mortgage Securities, Inc.
and
Ameriquest Mortgage Company

## PROPOSED TEMPORARY RESTRAINING ORDER

1.    A Verified Petition to Enjoin Foreclosure and for Other Relief having been filed with the Rockingham County Superior Court, in the above entitled matter; it appears from the Verified Petition that the Defendants seek an imminent foreclosure of a mortgage on the property of the Plaintiffs.

2.    That further, an Order was issued in the action of "In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation," M.D.L. No 1715, Lead Case No 05-cv- 07097 (N.D. Ill.) by the Northern District of Illinois

3.    The Plaintiffs are entitled to an enforceable right to cancel their mortgage under that decision.

4.    That based on the Verified Petition instituting the above entitled matter it clearly appears from the specific facts that immediate and irreparable injury, loss and damage will result to the Petitioners if notice to the adverse parties is required prior to the Temporary Restraining Order being issued as the Defendants may foreclose on the Plaintiffs' dwelling house resulting in said irreparable harm to the Plaintiffs.  A Temporary Restraining Order is hereby granted temporarily restraining the Defendants from proceeding with the foreclosure of the Plaintiffs' property in Hampton, New

1

A TRUE COPY ATTEST

CLERK _____

Hampshire.  The said notice shall expire within ten (10) days of the signing of this

Order.  The Plaintiffs shall issue Orders of Notice for a preliminary injunction in

accordance with Superior Court Rule 161 B.


_____          _____
Date                                                              Presiding Justice

A TRUE COPY ATTEST

CLERK

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss

SUPERIOR COURT

Raymond P. and Linda C. Dunn

v.

Deutsche National Trust Company
As Trustee of Ameriquest Mortgage Securities, Inc.
and
Ameriquest Mortgage Company

## VERIFIED PETITION TO ENJOIN FORECLOSURE AND FOR OTHER RELIEF

NOW COME Raymond P. Dunn and Linda C. Dunn of 38 Norton Road, Hampton, County of Rockingham and State of New Hampshire and complain against Deutsch Bank National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc. and Ameriquest Mortgage Company and say:

1.    That the Plainitiffs as joint tenants with rights of survivorship own the real estate located at 38 Norton Road, Hampton, County of Rockingham and State of New Hampshire.

2.    That the Defendant Deutsch Bank National Trust Company is the assignee of a mortgage originally granted by the Plaintiffs' to Ameriquest Mortgage Company with a former address of 1 New Hampshire, Suite 225, Newington, New Hampshire 03801 dated February 18, 2005 recorded in the Rockingham County Registry of Deeds Book 4444 Page 0691 attached hereto marked Exhibit A.

3.    That at the time of the signing of the mortgage to Ameriquest Mortgage Company, Mr. & Mrs. Dunn were gainfully employed.

4.    That on May 31, 2007 Mrs. Dunn was in a serious automobile accident resulting in her inability to continue working.

1

A TRUE COPY ATTEST

CLERK _Raymond Taylor_

5.     That the said Raymond P. Dunn lost his job in June 2007 and is presently in the State of Florida seeking employment there as employment opportunities are more numerous in the State of Florida.

6.     That at the time of the signing of the mortgage with Amerquest Mortgage Company, Ameriquest Mortgage Company never informed the Plaintiffs that in fact the mortgage was a variable interest rate mortgage.

7.     That at the time of signing the mortgage the Defendant assignor advised the Plaintiffs that the 18 page mortgage consisted of a lot of technical information the Plaintiffs did not need to read.

8.     That the Defendant assignor Ameriquest Mortgage Company indicated to the Plaintiff's where to sign the note and mortgage in question.

9.     That the interest rate kept increasing after the original mortgage was signed making it almost impossible for the Plaintiffs to make the mortgage payments.

10.     That at the present time the Plaintiffs' are in the process of obtaining refinancing to pay off the mortgage due and owing the assignor and/or the mortgagee in the above entitled matter.

11.     That the Plaintiffs cannot complete the refinancing of their property on or before the date set for the foreclosure, namely December 6, 2007 as is more particularly set forth in the Notice of Mortgagee's Sale of Real Estate attached hereto marked Exhibit B.

12.     That by Ameriquest Mortgage Company letter dated November 20, 2007 Ameriquest Mortgage Company acknowledged that claims have been filed against Ameriquest for failure to provide proper notices of right to cancel to its borrowers as is

2

A TRUE COPY ATTEST

CLERK _____

more particularly set forth in the notice, a copy of which is attached hereto marked Exhibit C.

13.    That the mortgage in question having been dated February 18, 2005 as is more particularly set forth in paragraph 2 of Exhibit C hereinabove, the mortgage in question is clearly within the three (3) year right to cancel the mortgage transaction.

14.    That the pending mortgage foreclosure sale clearly has not been completed.

15.    That the mortgagors have the right to cancel the mortgage under the terms of the mortgage and the right to cancel the mortgage since it is less than three (3) years since the mortgage was originally written between the Plaintiffs and the Defendant mortgagee.

16.    That the Plaintiffs do not have sufficient time to re-mortgage the premises in question prior to the scheduled foreclosure.

17.    That the Plaintiffs require sixty (60) days to complete the refinancing of their property.

18.    That the value of the Plaintiffs property exceeds the balance due and owing on the mortgage.

19.    That the Plaintiffs have no adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court grant the following:

3

A TRUE COPY ATTEST

CLERK

EX PARTE RELIEF:

a.     Grant a temporary restraining order enjoining the scheduled foreclosure sale scheduled for December 6, 2007 or any adjourned date thereof, pending a hearing on the merits of this Petition.

b.     Grant such other and further ex parte relief as justice may require.

TEMPORARY RELIEF:

c.     Issue Orders of Notice to be served on the Defendants Ameriquest Mortgage Company, P.O. Box 11000, Santa Ana, California 92711-1000 and William J. Amann, Esq., 92 Montvale Avenue, Suite 2950, Stoneham, Massachusetts 02180.

d.     Grant a preliminary injunction enjoining the foreclosure sale scheduled for December 6, 2007 or any adjourned date thereof, pending a hearing on the merits of this Petition.

e.     Grant such other and further temporary relief as justice may require.

PERMANENT RELIEF:

f.     Declare the mortgage in question null and void and cancel any and all finance charges due and owing pursuant to the order of the Court in "In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation," M.D.L. No. 1715, Lead Case No. 05-cv 07097 (N.D. Ill.).

g.     Permanently enjoin the foreclosure sale of the Plaintiffs property.

h.     Grant the Plaintiffs the cancellation of the mortgage as more particularly set forth at 38 Norton Road, Hampton, County of Rockingham and State of New Hampshire dated February 18, 2005 and recorded in the Rockingham County Registry of Deeds at Book 4444, Page 0691.

A TRUE COPY ATTEST

CLERK

4

i.    Order the Defendants to pay the Plaintiffs attorneys fees and costs

associated with this Petition.

j.    Grant such other and further relief as may be just.

Dated:  November 26, 2007

_Linda C. Dunn_
Linda C. Dunn


State of New Hampshire
Rockingham, ss

Personally appeared Linda C. Dunn, on November 26, 2007, who took oath that the foregoing statements are true to the best of her knowledge and belief, before me

_Charlene R. Henson_
~~Notary Public~~/Justice of the Peace
My Commission Expires: Nov. 5, 2008



Respectfully submitted,
Raymond P. & Linda C.Dunn
By her attorneys,
Engel & Associates, PLLC

Dated:  November 26, 2007

By: _David C. Engel_
David C. Engel, Esq.
21 Hampton Road
Exeter, NH  03833
(603) 778-8535

A TRUE COPY ATTEST
CLERK _____

5

Exhibit A

BK 4 4 4 4 PG 0 6 9 7

Re~~turn~~ MAIL TO

~~Ameriquest Mortgage Company~~
~~P.O. Box 11507,~~
~~Santa Ana, CA 92711~~

Prepared By: Ameriquest Mortgage Company
Alison Hanson
One New Hampshire, Ste. 225
Newington, NH 03801

013831

2005 MAR -1 PM 2:41

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **February 18, 2005**                  ,
together with all Riders to this document.
(B) **"Borrower"** is **Raymond P Dunn and Linda  Dunn**

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is **Ameriquest Mortgage Company**

NEW HAMPSHIRE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3030  1/01
0110230125 - 7409
02/18/2005 9:34:47

AM6NH (0311)
Page 1 of 15                    Initials: KD
            VMP Mortgage Solutions (800)521-7291          ICD

0000011023012503014216O1

A TRUE COPY ATTEST
CLERK 

BK 4444 PG 0692

Lender is a **Corporation**
organized and existing under the laws of **Delaware**
Lender's address is **1100 Town and Country Road, Suite 200   Orange, CA 92868**

Lender is the mortgagee under this Security Instrument.
(D) **"Note"** means the promissory note signed by Borrower and dated **February 18, 2005**
The Note states that Borrower owes Lender **three hundred sixty-two thousand five hundred twenty-four and 00/100** Dollars
(U.S. $ **362,524.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2035**
(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) **"Escrow Items"** means those items that are described in Section 3.
(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

AM6NH (0311)                          Page 2 of 15                          Form 3030  1/01

0110230125 - 7409

02/18/2005 9:34:47

0000011023012503014216O2



A TRUE COPY ATTEST

CLERK

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender with mortgage covenants, and with power of sale, the following described property located in the

     **County**      of      **ROCKINGHAM**      :
    [Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 0
**38 Norton Rd.**
**Hampton**
("Property Address"):

          which currently has the address of
                    [Street]
     [City], New Hampshire **03842**    [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials:

**AM6NH** (0311)         Page 3 of 15          **Form 3030  1/01**
0110230125 - 7409

02/18/2005  9:34:47

0000011023012503014216O3

A TRUE COPY ATTEST
CLERK 

BK 4444 PG 0694

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or

Initials: _____

AM6NH (0311)                    Page 4 of 15                    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

0000D1102301250301421604

A TRUE COPY ATTEST

CLERK _____

encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

AM6NH (0311)        Page 5 of 15        Form 3030 1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503014216O5

A TRUE COPY ATTEST

CLERK _____

# DUNN V. AMERIQUEST MORTGAGE COMPANY ET AL.

## CERTIFIED STATE COURT RECORD (PART 4 OF 4)

BK 4444 PG 0696

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

0110230125 - 7409

02/18/2005  9:34:47



A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 6 9 7

promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: ____

**AM6NH** (0311)               Page 7 of 16               Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47



000001102301250301421607

A TRUE COPY ATTEST

CLERK ____

BK 4444 PG 0698

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange

Initials:

AM6NH (0311)                    Page 8 of 15                         Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

00000110230125030142160B

A TRUE COPY ATTEST

CLERK 

for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest

Initials: _____

AM6NH (0311)                    Page 9 of 15                    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503014216O9

A TRUE COPY ATTEST

CLERK _____

BK 4444 PG 0700

in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

0110230125 - 7409

02/18/2005 9:34:47



A TRUE COPY ATTEST
CLERK _____

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement

Initials: _____

AM6NH (0311)                              Page 11 of 15                              Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47

0000011023012503014216 11

A TRUE COPY ATTEST

CLERK 

BK 4444 PG 0702

by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

AM6NH (0311)    Page 12 of 15    Form 3030 1/01

0110230125 - 7409

02/18/2005 9:34:47



A TRUE COPY ATTEST

CLERK _____

BK 4 4 4 4 PG 0 7 0 3

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale in the manner provided by Applicable Law to Borrower and other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender shall deliver to the purchaser Lender's deed conveying indefeasible title to the Property, discharged of all rights of redemption by Borrower. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Discharge.** The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charges tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the Property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

**24. Releases.** Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and other interests in the Property.

**25. Attorneys' Fees.** Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

Initials:

AM6NH (0311)                    Page 13 of 15                    Form 3030  1/01

0110230125 - 7409

02/18/2005  9:34:47



0000011023012503014216I3

A TRUE COPY ATTEST

CLERK

BK 4444 PG 0704

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____ (Seal)
Raymond P Dunn                  -Borrower

_____

_____ (Seal)
Linda  Dunn                     -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                                   -Borrower

**AM6NH** (0311)                         Page 14 of 15                    **Form 3030  1/01**
0110230125 - 7409
02/18/2005 9:34:47 AM

0000011023012503014421614

A TRUE COPY ATTEST

CLERK 

BK 4444 PG 0705

**STATE OF NEW HAMPSHIRE,** County ss: Rockingham

The foregoing instrument was acknowledged before me this 16 February 2005 by
Day/Month/Year

Raymond P. Dunn and Linda C. Dunn

My Commission Expires:

Elizabeth A. Moreau
Notary Public, New Hampshire
My Commission Expires July 14, 2009



Notary Public/Justice of the Peace



0000011023012503014216115

400-15NH (01/04)                Page 15 of 15                0110230125 - 7409

02/18/2005 9:34:47 AM

A TRUE COPY ATTEST
CLERK

## Exhibit A - Property Description

BK 4444 PG 0706

Closing date:                    02/18/2005

Property
Address:                         38 Norton Road, Hampton, New Hampshire 03842

Loan Policy Number:

Owner Policy Number:             * NONE *

A certain tract or parcel of land, with the buildings thereon, situated on Norton Road, Town of Hampton, County of Rockingham and State of New Hampshire, being Lot #4 on a plan entitled "Subdivision Plan for Thermo Homes, Inc.", dated January 17, 1984 and recorded as Plan #D-12661, to which reference may be made for a more particular description. Subject to a lot size requirements as cited on Plan #D-12661 and any and all easements and restrictions of record; including memberships and/or ownerships of non-municipal water and/or sewer systems, if any.

A TRUE COPY ATTEST

CLERK

BK 4 4 4 4 PG 0707

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of February , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

38 Norton Rd., Hampton, NH  03842
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  **9.950 %.** The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of  March, 2007  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials

Loan Number: 0110230125 - 7409

000001102301250302150301

810-1 (Rev 1/01)

Page 1 of 3

02/18/2005 9:34:47 AM
A TRUE COPY ATTEST

CLERK

BK 4444 PG 0708

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **five and one-half** percentage points ( **5.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.950%** **or less than 9.950%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.950)% or less than 9.950)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _____

Loan Number: 0110230125 - 7409

0000011023012503021503302

610-2 (Rev 1/01)

02/18/2005 9:34:47 AM
A TRUE COPY ATTEST
CLERK

BK 4444 PG 0709

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower Raymond P Dunn                          Borrower Linda  Dunn

_____ (Seal)     _____ (Seal)
Borrower                                         Borrower

Loan Number:  0110230125 - 7409


0000011023012530302150303

610-3 (Rev 1/01)                    Page 3 of 3

02/18/2005 9:34:47 AM

A TRUE COPY ATTEST

CLERK _____

## ABLITT & CHARLTON, P.C.
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone: (781) 246-8995
Fax: (781) 246-8994

**BY REGULAR AND CERTIFIED MAIL**

11/05/2007

Linda Dunn
38 Norton Road
Hampton, NH 03842
4.2286 / Dunn

### NOTICE OF MORTGAGE FORECLOSURE SALE

Re:    Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities,
Inc.  Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and
Servicing Agreement Dated as of March 1, 2005, Without Recourse/ Raymond P. Dunn
and Linda Dunn

Property Address: 38 Norton Road, Hampton, NH 03842

Dear Linda Dunn:

Pursuant to N.H. Rev. Stat. Ann. §479:25 et seq., as amended, enclosed is a copy of the Notice of
Mortgagee's Sale of Real Estate.

This notice is provided to you because an examination of the record title shows that you held an
interest of record in the property thirty (30) days prior to the sale.

Our experience has shown us that you are likely to benefit if you allow qualified bidders at the
foreclosure sale to enter and inspect the premises.  This may result in a higher purchase price.

If you are willing to allow qualified bidders to enter and inspect the premises, please be present at the
time of the foreclosure sale.

Very truly yours,

Present holder of mortgage
By its Attorney,

William J. Amann, Esq.
4.2286 / Dunn
CERTIFIED MAIL NO. 7007 2560 0001 6335 7747
RETURN RECEIPT REQUESTED

A TRUE COPY ATTEST

CLERK _____

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Raymond P. Dunn and Linda Dunn to Ameriquest Mortgage Company, dated February 18, 2005 and recorded with the Rockingham County Registry of Deeds at Book 4444, Page 691, of which mortgage Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R2 under the Pooling and Servicing Agreement Dated as of March 1, 2005, Without Recourse is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing, the same will be sold at Public Auction at 2:00 PM on December 6, 2007, on the mortgaged premises located at 38 Norton Road, Hampton, NH 03842 all and singular the premises described in said mortgage,

TO WIT:

A certain tract or parcel of land, with the buildings thereon, situated on Norton Road, Town of Hampton, County of Rockingham and State of New Hampshire, being Lot #4 on a plan entitled "Subdivision Plan for Thermo Homes, Inc.", dated January 17, 1984 and recorded as Plan #D-12661, to which reference may be made for a more particular description. Subject to a lot size requirements as cited on Plan #D-12661 and any and all easements and restrictions of record; including memberships and/or ownerships of non-municipal water and/or sewer systems, if any.

For mortgagors' title see deed recorded with Rockingham County Registry of Deeds in Book 3247, Page 2353.

NOTICE: PURSUANT TO NEW HAMPSHIRE RSA 479:25 YOU ARE HEREBY NOTIFIED THAT YOU HAVE A RIGHT TO PETITION THE SUPERIOR COURT FOR THE COUNTY IN WHICH THE MORTGAGED PREMISES ARE SITUATED WITH SERVICES UPON THE MORTGAGEE, AND UPON SUCH BOND AS THE COURT MAY REQUIRE TO ENJOIN THE SCHEDULED FORECLOSURE SALE.

A TRUE COPY ATTEST

CLERK

These premises will be sold and conveyed subject to and with the benefit of all rights, rights of way, restrictions, easements, covenants, liens or claims in the nature of liens, improvements, public assessments, any and all unpaid taxes, tax titles, tax liens, water and sewer liens and any other municipal assessments or liens or existing encumbrances of record which are in force and are applicable, having priority over said mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed.

TERMS OF SALE:

A deposit of TEN THOUSAND ($10,000.00) DOLLARS by certified or bank check will be required to be paid by the purchaser at the time and place of sale. The balance is to be paid by certified or bank check at Ablitt & Charlton, P.C., 92 Montvale Avenue, Suite 2950, Stoneham, MA 02180, other terms and conditions will be provided at the place of sale. The description of the premises contained in said mortgage shall control in the event of an error in this publication.

OTHER TERMS, IF ANY, TO BE ANNOUNCED AT THE SALE.

Present holder of said mortgage

By its Attorneys,

_____
Ablitt & Charlton, P.C.
William J. Amann, Esq.
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone: (781) 246-8995
Fax: (781) 246-8994

Dated: 11/05/2007

4.2286 / Dunn

A TRUE COPY ATTEST

CLERK _____



DUNN RAYMOND P
38 NORTON RD
HAMPTON, NH 03842

November 20, 2007

VIA Certified Mail RRR and First Class M
Article No.  7182 6389 3060 1132 5261

Loan Number:     0110230125
Property Address:     38  NORTON RD, HAMPTON  NH, 03842

Dear Homeowner(s):

Certain borrowers have challenged Ameriquest Mortgage Company's ("Ameriquest") practices under the Truth in Lending Act. They claim that Ameriquest has not provided proper Notices of Right to Cancel to its borrowers. Borrowers who did not receive a legally sufficient Notice of Right to Cancel have up to three years to cancel their mortgage transaction (four years in Massachusetts). The right to cancel ends if there is a completed foreclosure sale.

You have been identified as someone whose Ameriquest loan is subject to a foreclosure sale in the near future. You should review your transaction with an attorney or legal services organization to determine if you have an enforceable right to cancel and whether it is in your interest to cancel.

If you cancel, a court will need to determine if your cancellation is effective. If a court determines that your cancellation is effective, your mortgage will be void and you will not have to pay any finance charges. Instead, you will have to immediately repay any unpaid principal amount (for example, by refinancing your loan).

This Notice is being given to you pursuant to an order of the Court in "*In re Ameriquest Mortgage Company Mortgaged Lending Practices Litigation*," M.D.L. No. 1715, Lead Case No. 05-cv-07097 (N.D. Ill.). Please do not call the Court.

Sincerely,

Ameriquest Mortgage Company

A TRUE COPY ATTEST

CLERK

# THE STATE OF NEW HAMPSHIRE

## Rockingham Superior Court

PO Box 1258
Kingston, NH  03848 1258
603 642-5256

# ORDER OF NOTICE

Raymond P. Dunn v. Deutsche National Trust Company
Linda C. Dunn    Ameriquest Mortgage Company

NO. 07-E-0632                          RETURN DAY:  01/02/2008

You have been sued and named as a party in a case filed with the
Rockingham Superior Court.  Attached is a copy of the pleading which
began this case.

Raymond P. Dunn, Linda C. Dunn shall notify each Defendant of the
above action by serving the defendant(s) by December 18, 2007 with a
copy of the pleading initiating the case, orders that the Court has
already issued, and this Order in a manner allowed by law.
Plaintiff shall file with the Clerk verification of the service
process by January 02, 2008.

**IMPORTANT NOTICE TO Deutsche National Trust Company, Ameriquest
Mortgage Company:**
You must file a written appearance form with the Clerk on or before
January 02, 2008.  You must also file by February 01, 2008 a plea,
answer or demurrer.  Send a copy of the appearance form and any
other documents filed with the court to the attorney for the party
filing the pleading or to the party if there is no attorney.  The
name and address of the attorney or the party filing the pleading is
contained in the pleading.  If you do not comply with these
requirements you will be considered in default, you will not have an
opportunity to dispute the claim(s) and the court may issue orders
in this matter which may affect you without your input.

**NOTICE OF HEARING:** A Hearing on the following matters is scheduled
for December 05, 2007 at 9:00 AM. at 10 Route 125 in Brentwood:

### Temporary Hearing

Hearing will be limited to offers of proof, 15 minutes per party.
Motions for a more extended hearing will be addressed at this
hearing.  Parties against whom ex parte relief has been issued may
request a more immediate hearing.  Service of this notice must be
completed Two (2) days prior to hearing; otherwise, the Court may
dissolve any orders made ex parte or continue hearing to a later
date.

Please advise clients, witnesses, and others that it is a class B
felony to carry a firearm or other deadly weapon as defined in
RSA 625:11,V in a courtroom or area used by a court.

A TRUE COPY ATTEST

CLERK

07-E-0632                                              Page  2
RE:   Raymond P. Dunn, et al vs. Deutsche National Trust, et al

                                    BY ORDER OF THE SUPERIOR COURT

11/28/2007

**COURT COPY (lzt)**                Raymond Taylor
                                    Clerk of Court

A TRUE COPY ATTEST

CLERK

AOC Form SUEP140 (Rev. 09/20/2001)